# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

   v.

MARCUS MAJOR,
   *Defendant-Appellant.*

No. 10-10147

D.C. No.
1:07-cr-00156-
LJO-1

UNITED STATES OF AMERICA,,
   *Plaintiff-Appellee,*

   v.

JORDAN HUFF,
   *Defendant-Appellant.*

No. 10-10148

D.C. No.
1:07-cr-00156-
LJO-2

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted
January 9, 2012—San Francisco, California

Filed March 27, 2012

Before: J. Clifford Wallace, John T. Noonan, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Wallace;
Partial Concurrence and Partial Dissent by Judge Noonan

## COUNSEL

Kimberly A. Sanchez, Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

Jerald Brainin, Esq., Los Angeles, California, for defendant-appellant Marcus Major.

Arthur H. Weed, Esq., Santa Barbara, California, for defendant-appellant Jordan Huff.

## OPINION

WALLACE, Senior Circuit Judge:

In these consolidated appeals, Marcus Major and Jordan Huff appeal from their convictions under Title 18 U.S.C. §§ 1951 and 924. They also appeal from their sentences pursuant to section 924(c). We have jurisdiction based on 28 U.S.C. § 1291. We affirm their convictions, but vacate their sentences and remand for resentencing.

### I.

Between December 24, 2005, and July 24, 2006, retail establishments in Fresno and Madera, California, were plagued by a string of armed robberies. Major and Huff were arrested on July 24, 2006, while attempting to flee from the scene of the robbery of Bulldog Liquor. They were indicted

on June 14, 2007, for conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951; conspiracy to use, carry, brandish, and discharge firearms during and in relation to a crime of violence in violation of 18 U.S.C. § 924(o); six counts of discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c); twenty-four counts of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c); and thirty counts of interference with commerce by robbery in violation of 18 U.S.C. § 1951.

Major and Huff were tried together with other co-defendants, and on December 22, 2009, the jury returned guilty verdicts on all counts against both Major and Huff. The district court sentenced them on March 25, 2010. Huff's sentence included prison terms of: 121 months for each of the conspiracy and robbery counts (Counts 1, 2, and 33 through 62), to be served concurrently; 120 months for the first count of discharging a firearm (Count 3), to be served consecutive to the conspiracy and robbery sentences; and 300 months for each of the remaining 29 discharging and brandishing offenses (Counts 4 through 32), with each term to run consecutively. Major's sentence was identical except that he was sentenced to concurrent terms of 135 months for Counts 1, 2, and 33 through 62. Thus, Huff was sentenced to 8,941 months (745 years, 1 month) and Major to 8,955 months (746 years, 3 months) imprisonment.

## II.

Major and Huff contend that they were denied a fair trial because the district court allowed the government to present evidence of other crimes in which they were implicated and evidence of their affiliation with the "High Roller Boyz," a criminal street gang. They also contend that the district court denied them their Sixth Amendment right to prepare for trial by ordering that they could have no contact with anyone other than their attorneys during the trial. In challenging their sen-

tences, Major and Huff argue that section 924(c) violates the doctrine of separation of powers and resulted in cruel and unusual punishment in violation of the Eighth Amendment. Finally, they argue that the district court erred in using a "discharging" offense, rather than a "brandishing" offense as the first conviction under section 924(c), resulting in sentences three years longer than if the district court had used a "brandishing" offense as the first conviction.

We review the district court's evidentiary rulings for abuse of discretion. *United States v. Edwards*, 235 F.3d 1173, 1178 (9th Cir. 2000). The constitutionality of the district court's order restricting Major and Huff's communication, the constitutionality of section 924(c), and the district court's interpretation of section 924(c), on the other hand, are questions of law, which we review de novo. *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1131 (9th Cir. 2009). We reject all but the last of their arguments. Thus, we affirm their convictions but vacate their sentences and remand for resentencing.

## III.

Major argues that the district court abused its discretion by permitting the government to present evidence of an uncharged home invasion robbery, three uncharged drive-by shootings, and his affiliation with the High Roller Boyz. Major and Huff had moved to exclude the evidence of the shootings and home invasion under Rules 403 and 404(b) of the Federal Rules of Evidence. They moved to exclude the evidence of gang affiliation under Rules 402 and 403. The government opposed the motions, arguing that the shootings and home invasion showed an association between Major and Huff and established their identities, and that their gang affiliation established identity, association, and motive.

The district court denied both motions. At trial, the government presented evidence of the shootings and the home invasion, and discussed this evidence at some length in the final

arguments. The government also elicited testimony showing that Major and Huff were members of a criminal street gang known as the High Roller Boyz. We now discuss whether the district court abused its discretion in denying their motions to exclude this evidence.

A.

Ballistics evidence indicated that the firearms used in the shootings and home invasion were also used in some of the robberies, including the final robbery when Major and Huff were apprehended. Therefore, according to the government's theory, evidence that Major and Huff committed the prior crimes made it more likely that they were the ones who committed the charged robberies.

To support its theory, the government presented evidence that Major, Huff, and their co-defendant, Porcha Neal, committed the drive-by shootings. The evidence suggested that Neal orchestrated the shootings as part of a child custody dispute. Evidence showed that Major's and Huff's cell phones were in the area of the shooting at the time.

With respect to the home invasion, Victor Murray testified that he was involved in that crime with Major and Huff. He described the firearms and how they were used. His testimony also suggested that Major and Huff moved on to robbing retail stores because the home invasion robbery was not very lucrative.

[1] Major argues that the evidence of the drive-by shootings and home invasion was inadmissible under Rule 404(b). That rule forbids the use of evidence of other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge,

identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2). Thus, Rule 404(b) "is a rule of inclusion—not exclusion." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc). "Once it has been established that the evidence offered serves one of [the purposes authorized by Rule 404(b)(2)], . . . the only conditions justifying the exclusion of the evidence are those described in Rule 403 . . . ." *Id.* (internal quotation marks omitted).

**[2]** The government offered the evidence of the shootings and home invasion to prove identity, which was a material element of the charged crimes. Identity was at issue because neither Major nor Huff admitted that they were the perpetrators of the robberies. That the firearms used in the drive-by shootings and home invasion were also used in some of the robberies is relevant to prove that the same individuals who perpetrated the shootings and home invasion also perpetrated the robberies in which those firearms were used. This fact is relevant to prove identity because a jury could reasonably assume that possession of the firearms did not change during the period between each crime.

**[3]** To be relevant in the Rule 404(b) context, evidence of other acts must be sufficient for a jury to "reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). Here, the evidence was sufficient to establish that the shootings and home invasion took place and that Major and Huff committed those crimes. Because the evidence of their other crimes was offered to prove identity and actually served that purpose, the district court did not abuse its discretion in holding that the evidence was admissible under Rule 404(b).

**[4]** Major also argues that the district court erred in holding, pursuant to Rule 403, that the probative value of the evidence establishing these crimes was not substantially outweighed by a danger of unfair prejudice or of needlessly presenting cumulative evidence. In support of his argument,

Major cites *United States v. Curtin*, where we held that the district court shirked its duty under Rule 403 when it permitted the government to present highly prejudicial evidence to the jury without first thoroughly reviewing the challenged evidence. 489 F.3d at 956-58. We held that a court "does not properly exercise its balancing discretion under Rule 403 when it fails to place on the scales and personally examine and evaluate *all* that it must weigh. . . . One cannot evaluate in a Rule 403 context what one has not seen or read." *Id.* at 958.

Major argues that the district court "made no attempt to evaluate all of the evidence the government admitted having, let alone the undisclosed evidence the government anticipated presenting through the testimony of Victor Murray." Appellant's Br. at 18.

However, the record shows that the district court carefully reviewed the evidence presented to it. In a hearing on the motion to exclude the evidence, the district court recognized the potential for prejudice. The court said:

> I need to hear from the government on the issue of whether or not you do have evidence other than this circumstantial evidence to show the gun and who in the robberies and secondly how strong your evidence is because obviously once we throw it out, once—in other words, throw it out in front of the jury, it's out. It's not something that I can after the fact listen to and say that's as weak as it gets and it's hardly worth what we've gone through here. It's too late then.

Hr'g Tr. 17, Sept. 4, 2009.

The government described its case, and defense counsel identified evidence it believed the government intended to introduce. Based on these representations, the district court concluded that the danger of unfair prejudice and of need-

lessly presenting cumulative evidence did not outweigh the probative value.

This case is not at all like the situation we addressed in *Curtin*, where the district court failed to review the challenged evidence thoroughly and, therefore, could not appreciate the degree of danger of unfair prejudice it posed. Major does not argue that the district court failed to understand the full scope of the *challenged* evidence. Here, the district court's review allowed it to appreciate fully and to weigh accurately the challenged evidence's probative value and its potential for unfair prejudice.

**[5]** In terms of whether the evidence was needlessly cumulative, the district court did its best to determine what other evidence the government had to prove the identity of the robbers. The government's other evidence was not strong enough to overcome the district court's discretion to conclude that the evidence of other crimes was not needlessly cumulative. The district court weighed everything it needed to weigh, and its decision to admit the evidence was not an abuse of discretion.

## B.

Major also argues that the district court abused its discretion by admitting evidence of Major and Huff's gang affiliation. The government argues that this challenge is moot because, while the district court denied the pre-trial motions of Major and Huff to exclude the evidence, the government never presented testimony at trial that the High Roller Boyz was a criminal street gang.

The government described High Roller Boyz as a criminal street gang in its opening statement and elicited testimony implying that the High Roller Boyz was a criminal street gang. For example, the government presented evidence that one of the prominent members of the High Roller Boyz was in jail; that members had nicknames such as "Woo Capone"

and "Crazy A"; that members wore symbolic clothing to identify themselves as members; and that they used hand signs. It would not have taken expert testimony for jurors to decide that High Roller Boyz was a criminal street gang. The issue is not moot.

Nevertheless, the district court did not abuse its discretion in admitting evidence of Major's and Huff's affiliation with the High Roller Boyz. As part of its case-in-chief, the government introduced a jacket taken from Huff's car with the spray painted words "High Roller Boyz" and "Killa Kountry" on it. The jacket was identical to jackets stolen during one of the robberies. The government also presented evidence that "Kountry" was Major's nickname.

**[6]** The fact that the jacket seized from Huff's car was identical to jackets taken in one of the robberies is relevant to establish that the seized jacket was taken during that robbery. The fact that the jacket was spray painted with the words "High Roller Boyz" is relevant to establish that the individuals who took the jackets in the robbery were associated with the High Roller Boyz. That "High Roller Boyz" refers to a criminal street gang of which Major and Huff were members is relevant to establish that they, as members of the gang, took the jackets during the robbery. Therefore, evidence of their High Roller Boyz gang affiliation is directly relevant to proving their motive and identity as the perpetrators of the robbery.

**[7]** Major and Huff vigorously denied that they were involved in the jacket theft. The other evidence linking them to this robbery was circumstantial. The district court took seriously the danger of unfair prejudice posed by this evidence. Therefore, before balancing the probative value against the risk of prejudice, the court held an evidentiary hearing to determine whether High Roller Boyz was a verifiable criminal street gang and to determine each defendant's affiliation with it. It found that the High Roller Boyz was a criminal street

gang and that Major and Huff were members. The district court concluded that the government could explain that High Roller Boyz was a gang in order for it to demonstrate identity and motive. In other words, the district court concluded that the danger of unfair prejudice did not substantially outweigh the evidence's probative value. That decision was not an abuse of discretion.

IV.

Huff next argues that he and Major were denied their right to prepare for trial because the district court ordered that they not have any contact with anyone other than their attorneys. The district court imposed this restriction after it heard evidence suggesting that Major and Huff had attempted to learn the names of jurors. Huff asserts that this restriction necessarily impeded his preparation for trial.

[8] We assume, without deciding, that a restriction on the communication of a defendant in custody could result in a violation of the Sixth Amendment right to prepare for trial. For example, such a restriction could conceivably prevent a defendant from soliciting help from family and friends in obtaining voluntary cooperation from witnesses. Nevertheless, Huff does not identify any evidence or offer any argument to establish how the restriction actually prevented him from preparing for his trial. Indeed, both Major and Huff requested that the district court lift the restriction so they could visit with their families on a holiday. But neither of them requested that the district court lift the restriction on the ground that they could not adequately prepare for trial. In the absence of a proper objection and of any evidence that Major and Huff were actually impeded in their ability to prepare for trial, there was no constitutional error in the district court's effort to ensure the safety of the jurors.

V.

Major and Huff's argument that section 924(c) violates the doctrine of separation of powers merits little discussion. In

*United States v. Kinsey*, we upheld an attack on the mandatory minimum sentence provision for drug trafficking crimes under 21 U.S.C. § 841(b)(1)(A). 843 F.2d 383, 393 (9th Cir. 1988), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000). We reasoned that "[c]ontrol and enforcement of drug abuse and drug trafficking fall within the scope of Congress' delegated powers and such mandatory penalty provisions do not threaten the independence of the judiciary as set forth in Article III of the United States Constitution." *Id.* We do not distinguish between mandatory minimum sentences under 21 U.S.C. § 841(b)(1)(A) and mandatory minimum sentences under 18 U.S.C. § 924(c). *United States v. Chaidez*, 916 F.2d 563, 565 (9th Cir. 1990).

**[9]** Huff offers a new argument. Although in *Kinsey* and *Chaidez* we held that Congress does not intrude on the judiciary by adopting mandatory minimum sentences, Huff contends that section 924(c) improperly allows the executive to intrude on the judiciary's power by giving the prosecutor authority to determine the length of a defendant's sentence through charging decisions. Huff's argument is creative, but wrong. It is true that section 924(c) leaves the executive branch with significant discretion to determine the potential penalties to which a criminal defendant might be exposed, at least when a defendant stands accused of multiple violations. But the discretion to decide whether to bring charges and which charges to bring is clearly a part of the executive authority—not the judicial authority. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion"). Section 924(c) does not violate the doctrine of separation of powers.

## VI.

Major and Huff also argue that section 924(c) violates the Eighth Amendment. We have rejected such challenges before.

In *United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998), we upheld a 95-year sentence under section 924(c) against an Eighth Amendment challenge. We reaffirmed this holding in *United States v. Parker*, 241 F.3d 1114, 1117-18 (9th Cir. 2001), and again in *United States v. Hungerford*, 465 F.3d 1113, 1118 (9th Cir. 2006).

**[10]** The sentences of Major and Huff are significantly higher in number of years. No one could dispute that a sentence of almost 750 years is harsh. But there is no difference in principle between their sentences and the 95-year sentence we upheld in *Harris*. Therefore, we adhere to our precedent and reject this argument.

Huff's fallback argument is that we should reconsider our precedents in light of *Graham v. Florida*, 130 S. Ct. 2011 (2010). There, the Supreme Court held that life imprisonment without possibility of parole for a juvenile convicted of a non-homicide crime constitutes cruel and unusual punishment. *Id.* at 2034. But *Graham* did not make any change to the law that we applied in the *Harris* line of cases. *Graham* is not irreconcilable with *Harris*, and we, therefore, must continue to follow our precedent. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) ("[T]he relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").

## VII.

Although we reject the argument that section 924(c) is unconstitutional, we must examine whether the district court properly applied the section. The problem is that the order in which convictions under section 924(c) are received can affect the mandatory minimum sentence, but section 924(c) provides no rule for ordering multiple convictions in the same verdict.

The minimum sentence for a violation of section 924(c) varies depending on a number of factors. A defendant's first conviction may result in a minimum sentence as low as five years (for using or carrying a firearm without brandishing or discharging it) or as high as thirty years (if the firearm "is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler"). 18 U.S.C. § 924(c)(1)(A)(i), (B)(ii). A defendant's second or subsequent conviction, however, carries a minimum sentence of twenty-five years imprisonment. 18 U.S.C. § 924(c)(1)(C)(i). When a defendant is charged and found guilty of multiple violations of section 924(c) in the same indictment, one of the convictions is treated as the first conviction, and the others are treated as "second or subsequent" convictions. *Deal v. United States*, 508 U.S. 129, 132 (1993).

Major and Huff were convicted of six counts of discharging a firearm (counts 3 through 8) and twenty-four counts of brandishing a firearm (counts 9 through 32). The statute provides a mandatory minimum sentence of seven years imprisonment for brandishing, and ten years for discharging. § 924(c)(1)(A)(ii), (iii). The district court rejected Major's and Huff's request that a brandishing count be deemed the first conviction, and instead deemed count 3, a discharging count, as the first conviction. The district judge reasoned that the statute "refers not to the first offense committed, but rather, the first offense convicted, and the order is established by the pleading. That is the indictment and the jury verdict." Hr'g Tr. 7, Mar. 25, 2010. Thus, Major and Huff received sentences three years longer than they would have had the district court deemed a brandishing count to be the first conviction.

**[11]** The district court was correct in concluding that section 924(c) requires the court to determine the order in which a defendant receives convictions, rather than the order in which offenses are committed. In *Deal*, the Supreme Court explained: "Under the terminology 'second or subsequent

conviction,' in the context at issue here, it is entirely clear . . . that a defendant convicted of a crime committed in 1992, who has previously been convicted of a crime committed in 1993, would receive the enhanced sentence." 508 U.S. at 135. The order in which the crimes were committed has no bearing on the sentence. However, the statute does not provide a rule for how a court should determine the order of convictions when a defendant is convicted of multiple offenses in the same indictment.

The district court held that the order of convictions is established by the indictment and jury verdict, but we have found no authority for that rule. Nor have we heard any persuasive argument to support it. In *Deal*, the petitioner argued that the term "conviction," as used in section 924(c) was ambiguous, because it could mean "either the return of a jury verdict of guilt or the entry of a final judgment on that verdict." 508 U.S. at 131. Under the former construction, multiple verdicts in the same indictment could constitute "second or subsequent" convictions. *Id.* But under the latter, multiple verdicts would not constitute "second or subsequent" convictions "since the District Court entered only a single judgment on all of the counts." *Id.* The Supreme Court rejected this argument and held that the term "conviction," as used in section 924(c), unambiguously means "the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction." *Id.* at 132. The Court recognized that "the terms 'second' and 'subsequent' admit of at least two meanings— next in time and next in order or succession," and that "[t]hat ambiguity is worth pursuing if 'conviction' means 'judgment,' since a judgment entered once-in-time can (as here) include multiple counts." *Id.* at 133 n.1. The Court did not attempt to resolve the ambiguity, however, because "[u]nlike a judgment on several counts, findings of guilt on several counts are necessarily arrived at successively in time." *Id.* Here, however, that ambiguity takes center stage because the order in which Major and Huff received their convictions directly impacts how long their sentences must be.

The government argues that the jury verdict form dictates the order in which findings of guilt are made because a verdict is not valid "until deliberations are over, the result is announced in open court, and no dissent by a juror is registered." *Harrison v. Gillespie*, 640 F.3d 888, 898-99 (9th Cir. 2011) (en banc), *quoting United States v. Nelson*, 692 F.2d 83, 84-85 (9th Cir. 1982). This principle is not controversial. However, the Supreme Court was not referring to the time when a jury verdict becomes valid when it reasoned that findings of guilt are "necessarily arrived at successively in time." *Deal*, 508 U.S at 133 n.1. In most cases, juries presented with multiple counts attempt to resolve all of the counts before returning their verdicts. When they do, the return of the verdicts on several counts is no less simultaneous than the entry of judgment on several counts. If "finding of guilt" means the time when the verdict becomes valid, then it is not at all "[u]nlike a judgment on several counts." *See id.* The Supreme Court's statement that findings of guilt are necessarily arrived at successively in time refers, instead, to the time when the jury actually makes its findings of guilt—during deliberations.

**[12]** Because "conviction" as used in section 924(c) means "finding of guilt," the only way to determine the order in which convictions are received on multiple counts in the same indictment is to determine the order in time in which the jury made its findings during deliberations. Because deliberations are secret, it will usually be impossible to make this determination. In the case before us, we cannot determine whether the jury found Major and Huff guilty of a brandishing offense before or after it found them guilty of a discharging offense.

This is not to say that it will always be impossible to determine the order in which a jury arrives at findings of guilt on multiple counts. For example, a jury might return verdicts on some counts in an indictment and not others. Fed. R. Crim. P. 31(b)(2). If the judge asked the jury to continue deliberation on the remaining counts and the jury later returned verdicts on them, then the court would know that the jury's determination

on the counts in the first return preceded those on the counts in the second return. Or, if a jury poll were to reveal a lack of unanimity as to one or more counts, the court could direct the jury to deliberate further. *Id.* at 31(d). If, after further deliberation, the jury returned unanimous verdicts, the court would know that the findings in the earlier return were made before the findings in the later return. But when verdicts on several counts are returned simultaneously, the court lacks sufficient information to determine the order in which the jury made findings of guilt, even if logic dictates that those findings were necessarily made successively in time.

We do not have before us other possibilities, such as special jury interrogatories or a judge's direction to number the findings of guilt in order of when the jury acted unanimously. Obviously, there are other possibilities, but they were not used in this case.

We also reject the government's proposed rule because it subjects the defendant entirely to the caprice of the judge approving the verdict form to be used by the jury. If we adopted a rule that determinations of guilt are made in the order in which they are listed in the verdict form, we might expect prosecutors to request verdict forms placing the offense with the highest penalty first. We would expect defendants, on the other hand, to request verdict forms placing the offense with the lowest penalty first. Section 924(c) offers no help in directing the district court which one to choose. In *Deal*, the Supreme Court eschewed a rule that would "confer [on prosecutors] the extraordinary new power *to determine the punishment for a charged offense* by simply modifying the manner of charging." 508 U.S. at 134 n.2. Similarly, we will not adopt a rule that would give either the prosecutor, the defense, or the court the power to determine the punishment for a charged offense by simply modifying the verdict form.

**[13]** Section 924(c) unambiguously provides that the order in which convictions are received must affect the mandatory

minimum sentence. However, it is ambiguous as to how such convictions should be ordered when verdicts on multiple counts are returned at the same time. We apply the rule of lenity when, "after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *United States v. Hayes*, 555 U.S. 415, 429 (2009), *quoting United States v. Shabani*, 513 U.S. 10, 17 (1994); *see also Rewis v. United States*, 401 U.S. 808, 812 (1971) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity"). Applying the rule of lenity, when the district court does not have sufficient information to determine the order in which the jury made determinations of guilt during jury deliberations on multiple counts under section 924(c), it must order the convictions so that the mandatory minimum sentence is minimized. In this case, application of the rule requires the district court to deem one of the brandishing counts, rather than a discharging count, to be the first conviction.

**AFFIRMED IN PART, VACATED and REMANDED IN PART.**

---

NOONAN, Circuit Judge, concurring and dissenting:

I concur in the opinion of the court except as to the sentences of over 700 years. The court says, "No one could dispute that a sentence of almost 750 years is harsh." No one would bother to characterize such a sentence as "harsh." It is simply incapable of execution.

No known human being has the capacity to live 700 years. No living human being is likely to live 700 years. On its face, the sentence is impossible to execute.

The United States asks us to affirm this sentence. It asks us to affirm a sentence that cannot be carried out. I do not

believe that we should participate in this utterly empty gesture.