RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 12-1219

TYREE DAVON WASHINGTON,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cr-20198—Denise Page Hood, District Judge.

Argued: April 26, 2013

Decided and Filed: May 10, 2013

Before: MOORE and STRANCH, Circuit Judges; HOOD, District Judge.*

_____

## COUNSEL

_____

**ARGUED:** Ronald E. Kaplovitz, KAPLOVITZ & ASSOCIATES, Sylvan Lake, Michigan, for Appellant. Jeanine M. Brunson, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Ronald E. Kaplovitz, KAPLOVITZ & ASSOCIATES, Sylvan Lake, Michigan, for Appellant. Jeanine M. Brunson, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

HOOD, District Judge. Defendant-Appellant Tyree Washington argues that the district court erred by: (1) denying his motion to suppress impermissibly suggestive identification evidence; (2) denying his motion for judgment of acquittal on the basis

_____

*The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

that the prosecution presented insufficient evidence to convict him on counts four and seven of the indictment; and (3) by imposing his three sentences under 18 U.S.C. § 924(c) in the order in which they were committed, thereby increasing his mandatory minimum sentence from fifty-seven years to sixty years. The government concedes that a limited remand is appropriate to determine how to order the defendant's sentences under § 924(c). For the reasons that follow, the district court's decisions to deny the defendant's motion to suppress and motion for judgment of acquittal are **AFFIRMED**. Because we agree that the district court erroneously imposed the defendant's sentences under § 924(c) in the order in which he committed each crime, we **VACATE** the judgment of the district court on this ground only, and **REMAND** for the limited purpose of recalculating the defendant's sentence.

## I. BACKGROUND

The charges against the defendant arose out of three carjackings that took place between March 12, 2010, and March 14, 2010. During the first carjacking, the defendant tapped a car window with a pistol and ordered Adam Czerwinski and his girlfriend to step out of their vehicle. When Mr. Czerwinski told his girlfriend to drive away, the defendant opened fire on the couple and shot Mr. Czerwinski twice in the arm.

Two days later, on March 14, 2010, the defendant and an accomplice confronted John and Crystal Nesbitt and their thirteen-year-old son in a parking lot. The defendant pointed his gun at Mr. Nesbitt's head and demanded that he hand him his car keys. When Mr. Nesbitt responded that he did not have the keys, the defendant yelled "You think I'm playing!?" and racked his weapon, feeding a bullet into the firing chamber. The son, who had been holding the car keys, threw them to the defendant. The defendant and his accomplice ran back to the car and stood outside it momentarily to figure out how to use the keypad. Mr. Nesbitt was able to observe the defendant the entire time since the defendant did not use anything to cover his face.

Two hours after the second carjacking, the defendant and his accomplice approached the driver's side of another car belonging to Carla Perry. Perry's cousin was

in the front passenger seat, and Perry's five-year-old son was in the backseat. The defendant placed his firearm against Perry's head, cursed at her, and ordered her to step out of the car. Perry began pleading with the defendant to allow her son to get out of the backseat, but the defendant continued threatening to kill both Perry and her son if she did not comply with his demands. Finally, the defendant grabbed Perry's son by the arm, threw him out of the car, and sped away in Perry's vehicle with his accomplice. The defendant and his accomplice were apprehended with loaded weapons soon afterwards by police officers.

Five months after these three carjackings, police officers asked Mr. Nesbitt to view a photo array to ascertain if he could recognize the men who carjacked him. Prior to the photo array, Mr. Nesbitt described his attacker to the officers as a "black male, nineteen (19) years old, with a medium brown complexion, 5'9", 150 pounds, with a small beard." The officers also instructed him that the photographs in the array could be affected by the lighting of the cameras, and that some features in the photographs, such as hair and facial hair, could be easily changed. After receiving these instructions, Mr. Nesbitt viewed the photo array and immediately picked out the defendant as the man who held him at gunpoint on March 14, 2010.

At trial, the defendant filed a motion to suppress Mr. Nesbitt's identification, arguing that it was unduly suggestive. After holding a hearing, the district court denied his motion. After trial, the defendant also filed a motion for judgment of acquittal, arguing that there was insufficient evidence for the jury to convict him on counts four and seven of the indictment, which involve the second and third carjackings committed against the Nesbitt family and Carla Perry. Specifically, the defendant argued that the prosecution presented insufficient evidence to prove that he had an "intent to cause death or serious bodily harm" while carjacking the Nesbitts and Ms. Perry. 18 U.S.C. § 2119. However, the district court denied this motion as well, and the defendant also argues on appeal that this denial was error.

During the defendant's sentencing, the government successfully requested that the district court impose the sentences for the three carjackings under § 924(c) in the

order in which the defendant committed them. Therefore, because the defendant discharged his firearm during the first carjacking, he received ten years for his first offense pursuant to 18 U.S.C. § 924(c)(1)(A)(iii), and two consecutive twenty-five year sentences for the second and third carjackings pursuant to 18 U.S.C. § 924(c)(1)(C)(i), for a total mandatory minimum sentence of sixty years. If, as the defendant requested, the district court had used its discretion to treat one of the brandishing counts as the first conviction under 18 U.S.C. § 924(c)(1)(A)(ii), then he would have received only seven years for his first offense, and his total mandatory minimum sentence would have been fifty-seven years. The government now concedes that chronological ordering of offenses for sentencing purposes under § 924(c) is erroneous, and requests a limited remand on this ground.

## II. STANDARD OF REVIEW

This court reviews "the denial of a motion to suppress identification evidence for clear error." *United States v. Beverly*, 369 F.3d 516, 538 (6th Cir. 2004) (citing *United States v. Hamilton*, 684 F.2d 380, 383 (6th Cir. 1982)). The burden rests on the defendant "to demonstrate that the pretrial identification procedure was impermissibly suggestive." *Id.* (citing *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992)). If the defendant meets this burden, then the court "must determine, in light of all of the circumstances, whether the unfair suggestiveness was conducive to a 'very substantial likelihood of irreparable misidentification.'" *Id.* (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

Further, "[w]hen reviewing the sufficiency of evidence in support of a jury verdict, this Court views the evidence in the light most favorable to the prosecution and gives the prosecution the benefit of all reasonable inferences from the testimony." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (citing *United States v. Sawyers*, 409 F.3d 732, 735 (6th Cir. 2005)). "Viewing the evidence in this manner, a jury verdict is supported by sufficient evidence if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989)). This standard is a great

obstacle to overcome, and presents the appellant in a criminal case with a very heavy burden. *United States v. Winkle*, 477 F.3d 407, 413 (6th Cir. 2007); *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007).

## III. ANALYSIS

### A. Identification Procedure

The defendant argues that the photo array used to identify him was impermissibly suggestive in violation of his due process rights. Specifically, the defendant argues that after Mr. Nesbitt described his attacker as having light brown skin, the police officers chose darker-skinned individuals than himself to appear in the photo array alongside him. He points out that the difference in skin tone is exacerbated by a glare from the camera flash that appears on his face.

"This court has prescribed a two-step analysis for determining the admissibility of identification testimony." *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005). "First, the defendant must show that the identification procedure was unduly suggestive." *Id.* "If the defendant meets this burden, then the court must evaluate the reliability of the identification in the totality of the circumstances." *Id.* (citing *Ledbetter v. Edwards*, 35 F.3d 1062, 1071–72 (6th Cir. 1994)). For a district court's admission of identification testimony to violate due process, the identification procedure must be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *United States v. Meyer*, 359 F.3d 820, 824 (6th Cir. 2004) (quoting *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986)) (internal quotation marks omitted).

The defendant falls short of his heavy burden in this instance. First, the police officer who prepared the array testified that he took care to ensure that the defendant shared substantial similarities with the other depicted men. This care is reflected in the photo array, as it reveals five African-American men in addition to the defendant, at least four of whom appear to have some sort of facial hair, and all five of whom appear to be around the same age as the defendant. Although it is true that the defendant has lighter skin than some of the depicted individuals, his skin tone is very close to the men in

photos four and five, and there is not a drastic difference between the defendant's skin tone and the remaining photos. Furthermore, although the defendant does have a glare on his face from the camera flash, Mr. Nesbitt was informed that the lighting and complexion of the depicted individuals could be easily altered. The officer who prepared the array also testified that he specifically chose photographs with similar glares to the one in the defendant's photograph, and at least four of the remaining five photographs do have a similar glare. Contrary to the defendant's argument, it simply does not appear upon review that this identification procedure was so impermissibly suggestive that there was a substantial likelihood of irreparable misidentification. *Meyer*, 359 F.3d at 824.

This court's opinion in *Sullivan* supports a conclusion that the identification in this case was not a violation of the defendant's due process rights. *Sullivan*, 431 F.3d at 984–85. The defendant in *Sullivan* argued that the photo array used to identify him was unduly suggestive because several witnesses described the defendant as having blue eyes, and he was the only suspect in the photo array with noticeably blue eyes. *Id.* at 985. Despite this distinction, this court upheld the district court's conclusion that the array "did not improperly single out the defendant" such as to render it unduly suggestive. *Id.* An identical conclusion is appropriate here.

Because the defendant failed to meet his burden to show that the photo array was unduly suggestive, an analysis of whether the identification was nonetheless reliable is unnecessary. *See Mills v. Cason*, 572 F.3d 246, 251 (6th Cir. 2009) (quoting *Ledbetter*, 35 F.3d at 1071) ("*If* the court determines that the identification was unduly suggestive, it *then* uses five factors . . . to evaluate 'the totality of the circumstances to determine whether the identification was nevertheless reliable.'") (emphasis added). Accordingly, because the identification procedure was not unduly suggestive, we conclude that the district court did not commit clear error by denying the defendant's motion to suppress the identification.

**B. Sufficiency of the Evidence**

To obtain a conviction for carjacking, the government must prove that a defendant had the  intent to kill or inflict serious bodily harm if "that action had been necessary to complete the taking of the car."  18 U.S.C. § 2119; *Holloway v. United States*, 526 U.S. 1, 12 (1999).  In this case, the defendant concedes that he possessed the requisite intent during the first carjacking because, on that occasion, he actually fired his weapon and shot Mr. Czerwinski twice in the arm.  However, the defendant argues that there was insufficient evidence presented that he intended to cause death or serious bodily harm to either the Nesbitts or Ms. Perry and her passengers.  Therefore, he argues that there was insufficient evidence for the jury to convict him on these counts.

To satisfy § 2119's intent element, the government must do more than show that the defendant made an "empty threat" or "intimidating bluff" towards the victim. *Holloway*, 526 U.S. at 11.  Moreover, the mere fact "that a defendant brandished a firearm during a carjacking is insufficient on its own to establish a specific intent to kill or cause serious bodily harm."  *United States v. Fekete*, 535 F.3d 471, 480 (6th Cir. 2008) (citing *Holloway*, 526 U.S. at 11).  However, if a defendant brandishes a firearm and (1) physically touches the carjacking victim, or (2) there is direct proof that the firearm was loaded, § 2119's specific intent element will be satisfied.  *Id.*; *see also United States v. Adams*, 265 F.3d 420, 425 (6th Cir. 2001) ("We think that physically touching a victim with a weapon, standing alone, is sufficient to justify a finding that the victim faces an imminent threat of physical harm, and indicates an intent on the part of the defendant to act violently.").  Moreover, even "in the absence of a physical touching or direct proof that the firearm was loaded," the government can still present sufficient evidence to satisfy § 2119's specific intent element by establishing "brandishing-plus." *Fekete*, 535 F.3d at 480.  The government establishes brandishing-plus simply by presenting "additional direct or circumstantial evidence that supports a finding that the defendant would have killed or seriously harmed the victim if the victim had resisted." *Id.*  This "[a]dditional evidence of intent may come in the form of circumstantial evidence that the firearm was loaded or other evidence related to the defendant's acts or

statements (e.g., a threat to kill or harm) that suggests that he or she had the requisite specific intent." *Id.* at 480–81.

In this case, the record is clear that the defendant physically touched Ms. Perry and her son when he put his firearm to Ms. Perry's head, grabbed her son's arm, and threw him out of the car, all while brandishing his weapon. Thus, there is no question that, under *Fekete*, the government presented sufficient evidence to satisfy § 2119's specific intent element. *Id.*; *see also Adams*, 265 F.3d at 425 (holding that touching a victim with a weapon and scuffling with a victim are sufficient physical touchings to indicate an intent on the part of a defendant to act violently).

Conversely, a review of Mr. Nesbitt's trial testimony reveals that although the defendant pointed his firearm at the Nesbitt family while demanding the car keys, there was no evidence presented that the defendant actually touched the Nesbitts with the firearm or otherwise. However, because the government presented sufficient additional evidence from which the jury could infer that the defendant would have killed or seriously harmed the Nesbitts if they had resisted his demands, the government met its burden to establish specific intent with respect to this carjacking.

For example, Mr. Nesbitt testified that the defendant pointed the firearm in his direction, racked it, and yelled "You think I'm playing?!" when Mr. Nesbitt did not immediately surrender his car keys. These actions support a finding of specific intent to kill or cause serious bodily harm because they are accompanied by the "clear implication . . . that if [the Nesbitts] did not comply, they would be shot or otherwise injured." *Fekete*, 535 F.3d at 482 (quoting *United States v. Arnett*, No. 97-6092, 1999 WL 994000, at *5 (6th Cir. Oct. 22, 1999)) (unpublished table opinion); *see also United States v. Glover*, 265 F.3d 337, 342 (6th Cir. 2001) (affirming a conviction under § 2119 where the defendant put a firearm to the victim's head and threatened to kill her). Moreover, when the defendant was apprehended shortly after carjacking the Nesbitts and Ms. Perry, the officers found two loaded firearms inside the vehicle. Because close temporal proximity between a carjacking and a police discovery that the firearm brandished at the carjacking is loaded establishes sufficient circumstantial evidence from

which a jury can infer that the defendant was carrying a loaded firearm at the carjacking, this evidence also helps satisfy § 2119's specific intent element. *Adams*, 265 F.3d at 425 n.2 (holding that a jury could infer that a defendant used a loaded gun earlier in the day when he used the same gun to fire shots at a police officer later that same day). Therefore, because we find that the defendant's actions and the police discovery of the loaded firearms constitute sufficient evidence to satisfy the government's burden to show brandishing-plus, it follows that there was sufficient evidence presented to support the defendant's conviction.[1] Thus, the district court properly denied the defendant's motion for judgment of acquittal.

### C. Ordering of Sentences under § 924(c)

Under 18 U.S.C. § 924(c)(1)(A), a defendant's first conviction receives a mandatory consecutive sentence of five, seven, or ten years, depending on whether the defendant used, brandished, or discharged a firearm during the crime. 18 U.S.C. § 924(c)(1)(A)(i)–(iii). Thereafter, 18 U.S.C. § 924(c)(1)(C)(i) prescribes that "[i]n the case of a second or subsequent conviction under this subsection, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years." The particular issue in this case revolves around the interpretation of the phrase "second or subsequent conviction." 18 U.S.C. § 924(c)(1)(C).

In *Deal v. United States*, 508 U.S. 129 (1993), the Supreme Court explained that the term "conviction" in § 924(c)(1)(C) "refers to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction." *Id.* at 132. The *Deal* Court also held that the twenty-five-year mandatory minimum for a second or subsequent conviction attaches not only when a defendant is convicted of an offense and is later convicted of another offense, but also when a defendant is convicted of multiple offenses in the same proceeding. *Id.* at 135–36. However, neither § 924(c) nor the

---

[1] During oral argument, defense counsel stated that the prosecution did not give pretrial notice to the defendant under Federal Rule of Evidence 404(b)(2)(A) that the prosecution intended to rely on the shooting of Mr. Czerwinski during the first carjacking as evidence of the defendant's intent to cause death or serious bodily harm to the victims of the second and third carjackings. Assuming this is true, we decline to consider the Czerwinski shooting as evidence of brandishing-plus in the second or third carjackings.

Supreme Court have addressed the issue raised in this case—how to order multiple convictions for sentencing purposes when the convictions arise out of the same indictment and proceedings.

As the facts before this court presently highlight, this is not a distinction without a difference. If, as in this case, a defendant has been convicted on multiple carjacking counts in the same proceeding, some of which involve brandishing a firearm and others discharging a firearm, then whichever conviction the district court treats as the first conviction during sentencing will determine whether the defendant begins with a five, seven, or ten-year mandatory minimum term of imprisonment. 18 U.S.C. § 924(c)(1)(A)(i)–(iii). Afterwards, all other carjacking convictions under § 924(c)(1)(C)(i) will receive a twenty-five year term of imprisonment, regardless of whether a firearm was used, brandished, or discharged during those particular crimes. 18 U.S.C. § 924(c)(1)(C)(I). Thus, the district court's ordering of the offenses could make up to a five-year difference in a defendant's mandatory minimum sentence.

Multiple possibilities exist for this order. For example, one could interpret the "second or subsequent conviction" as the second conviction listed on the jury's verdict form. § 924(c)(1)(C). As the defendant advocates, the district court could order the convictions in the order in which the defendant was charged with each crime, or, alternatively, the order could be left entirely within the district court's discretion. Currently, a decision on which approach is most desirable is largely uncharted territory, as the Ninth Circuit Court of Appeals is the only other circuit court to have spoken on this issue. *See United States v. Major*, 676 F.3d 803 (9th Cir. 2012). However, in *Major*, the court wisely pointed out that these approaches are problematic because they potentially give the prosecutor, defense, or the court the ability to determine the length of a defendant's sentence through an arbitrary standard, such as charging a defendant in a particular order or modifying the verdict form. *Id.* at 814. Although discussing a different issue, the Supreme Court in *Deal* also denounced a reading of § 924(c) that would give the government the power to alter a sentence through similar procedural means. *Deal*, 508 U.S. at 134 n.2 (declining to adopt the petitioner's reading of

§ 924(c), which the Supreme Court noted "would confer the extraordinary new power *to determine the punishment for a charged offense* by simply modifying the manner of charging.").

Given the underlying issues with these approaches, in addition to the doubt created by § 924(c) stemming from its failure to define how a district court should order multiple convictions for sentencing purposes when the convictions arise from the same indictment and proceedings, we agree with the Ninth Circuit that the "rule of lenity cautions that such doubt be resolved in [a defendant's] favor." *United States v. Ehle*, 640 F.3d 689, 698 (6th Cir. 2011); *Major*, 676 F.3d at 814–15. Pursuant to this principle, "the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ehle*, 640 F.3d at 698 (quoting *Albernaz v. United States*, 450 U.S. 333, 342 (1981)) (internal quotation marks omitted). Because we conclude that § 924(c)(1)(C) is ambiguous as to how convictions should be ordered for sentencing when a defendant is convicted on multiple counts of carjacking that arise from the same indictment and proceedings, we are bound by this principle. Therefore, we hold that the rule of lenity applies, and, on remand, the district court should resolve this ambiguity in the defendant's favor.

## IV. CONCLUSION

For the foregoing reasons, the district court's judgment is **AFFIRMED IN PART** with respect to its denial of the defendant's motion to suppress and motion for judgment of acquittal. The district court's judgment is **VACATED IN PART** with respect to the ordering of the defendant's convictions for sentencing under § 924(c). We **REMAND** for further consideration consistent with this opinion.