NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0154n.06

No. 24-5586

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 19, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) | |
| GLENN MILLER, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: COLE, STRANCH, and READLER, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Glenn Miller appeals his convictions for Counts 1 and 2 of an indictment dated July 27, 2023, charging Miller with violations of 18 U.S.C. § 2119(1) and § 924(c). Miller argues that the district court erred by admitting evidence of other bad acts at trial in violation of Federal Rule of Evidence 404(b), and requests this court to vacate his convictions and remand for further proceedings. For the reasons that follow, we **AFFIRM** the district court's decision.

## I.  BACKGROUND

Marlon Becton ran out of gas on his way to work at 3:00 a.m. on June 8, 2022. He was already late for his shift as a security guard at a FedEx warehouse, so he began pushing his car, a blue Chevrolet HHR, to the nearest gas station.[1] After he had pushed the car "a block or two," a good Samaritan in a box truck passed by, made a U-turn, and used his truck to push the HHR until

---

[1] At trial, Becton testified that his mother was the registered owner of the HHR and that she allowed him to use it to commute to work. For brevity's sake, we refer to the HHR as Becton's vehicle throughout this opinion.

it reached the parking lot of a nearby Chelsea Express gas station. R. 83, Trial Tr., PageID 389–90.

As Becton tried to push his car the remaining distance to a pump, he was approached by another person—this one asking for help. It was Miller. Unbeknownst to Becton, Miller's black 2020 Hyundai Sonata had been driven off by one its passengers while Miller was in the Chelsea Express's convenience store. Becton, still focused on reaching the gas pump, declined to assist Miller. After a third person helped push the HHR the rest of the way to the pump, Becton placed the gas nozzle into his tank and started walking towards to the convenience store.

But Miller approached Becton again, this time waving a gun. Miller told Becton to not make any "false moves" and directed him into the store. R. 83, PageID 393–94. Miller had the store clerk "hurry up and take [Becton's] money for . . . gas," and directed Becton back to his car. R. 83, PageID 394. Security footage showed that Miller was armed with at least two firearms, including one with an extended magazine. Becton began to pump gas, and Miller "rant[ed] and rav[ed]" and repeatedly told Becton "what he didn't want to do." R. 83, PageID 394–95. Before Becton had finished pumping gas, Miller sat in the passenger seat of the HHR. Becton returned to the driver's seat, and Miller, with the gun pointed at Becton, told him to drive.

Becton complied and began driving down the street. The gun was pointed at his hip. Miller directed Becton to head down an unlit side street, but Becton intentionally missed the turn. Miller then ordered him to take a right and pull over at a nearby funeral home, which Becton did. Then Miller raised the gun to Becton's "neck and head area" and told Becton to give him everything he had and "get the f--k out the car." R. 83, PageID 415. Becton "[s]wung the door open, threw [his] money, grabbed [his] backpack, [and] took off running." R. 83, PageID 395. Miller drove off in Becton's HHR, and Becton used his cellphone to call 911.

While Becton waited for the police to arrive, two blocks away, Brandon Phillips was sitting in his black 2020 Hyundai Sonata parked outside of his home at 1492 Maplewood Street watching NBA highlights on his phone. Phillips saw a "blue [C]hevy" HHR stop erratically "[a] couple of houses down . . . in front of [him]." R. 84, Trial Tr., PageID 501–02. Miller exited the HHR with two guns drawn and shot in Phillips's direction, hitting Phillips's face and shoulder. Phillips managed to escape and ran to a nearby residence for help, and Miller drove away in the Sonata. Crime scene investigators later found two spent nine-millimeter shell casings at the scene.

Memphis Police Department Officer Larry Bailey met Becton in the funeral home parking lot within ten minutes of his 911 call. While there, Officer Bailey received a broadcast concerning a carjacking involving a blue Chevrolet HHR on Maplewood Street (the "Maplewood Carjacking").[2] The officers responding to the Maplewood Carjacking had found Becton's identification in the vehicle, and, after Officer Bailey told them that Becton was the victim of a carjacking, he took Becton to the Cheslea Express. There, Officer Bailey reviewed the store's security footage and confirmed Becton's explanation of the encounter with Miller. Officer Bailey and Becton then went to Maplewood Street to identify the HHR. Becton found his vehicle parked on the curb. The distance from the Chelsea Express to the funeral home was less than a five minute drive, and the funeral home was approximately a two minute drive from the site of the Maplewood Carjacking.

Over the next several hours, police searched for Phillips's Sonata. At approximately 3:00 p.m. that day, Memphis Police Department Officer Mark Medina responded to a call regarding a black 2020 Hyundai Sonata with its tags missing. When Medina approached the vehicle, he saw

---

[2] On November 17, 2023, Miller pled guilty to Count 3 of the Indictment, which charged him under the federal carjacking statute, 18 U.S.C. § 2119(1). Accordingly, we will refer to the incident as a carjacking.

Miller inside. Miller "immediately took off running" when he saw Medina. R. 84, PageID 445. Another officer responding to the call apprehended Miller while Officer Medina secured the Sonata and confirmed that it belonged to Phillips.

Memphis Police Department Officer Charles Cathey processed Phillips's car after Officer Medina had it towed. In doing so, Officer Cathey recovered three pistols and an extended and smaller magazine from under the passenger's seat. Two of the firearms and both magazines were loaded. The two nine-millimeter shell casings collected at 1492 Maplewood Street were later established to have been fired by one of the recovered firearms.

The following month, Miller was indicted on seven counts relating to the events described above. Counts 1 and 2 pertained to the incident between Miller and Becton, whereas Counts 3 through 7 concerned the Maplewood Carjacking. On November 17, 2023, Miller pled guilty to Counts 3, 4, 5, 6, and 7. Miller elected to go to trial on the two remaining charges.

On December 18, 2023, Miller filed a motion in limine to exclude all evidence related to the Maplewood Carjacking on the basis that: (1) the evidence was not relevant to the remaining charges; (2) the Government could not identify a proper purpose for admitting the evidence; and (3) any probative value was substantially outweighed by the danger of unfair prejudice. In response, the Government argued that the evidence was admissible under Rule 404(b) and as res gestae. The district court denied Miller's motion without reaching whether it constituted res gestae, ruling it admissible under Rule 404(b) to prove Miller's "intent to commit the alleged HHR carjacking." R. 41, Order, PageID 86. However, the court indicated that it would "address with the Parties the contours of the details related to the carjacking that w[ould] be allowed at the trial to protect against the possibility of the jury drawing impermissible inferences from the information." R. 41, PageID 85 n.2. Later, the court clarified that its order required the

Government to sanitize Phillips's testimony by omitting where the bullet struck him and ensuring that Phillips did not convey "the sort of emotion that . . . no doubt he feels." R. 105, Hearing Tr., PageID 924–25. The court also permitted Phillips to testify only after the Government confirmed that Phillips had no obvious, visible wounds that could be connected to the shooting.

At trial, the jury heard testimony from several witnesses, including Becton, Phillips, and Officers Bailey, Medina, and Cathey. At the close of evidence, the district court provided the following limiting instruction:

> You've heard testimony that the defendant committed certain crimes other than the ones charged in counts one and two of the indictment. Specifically, you've heard testimony that the Defendant was involved in the carjacking of a 2020 Hyundai Sonata that occurred on June 8, 2022. You've also heard testimony that the Defendant discharged a firearm during the carjacking. If you find the defendant did those crimes, you can consider the evidence only as it relates to the [G]overnment's claim related to defendant's intent to commit the carjacking charged in Count 1 of the indictment. You must not consider it for any other purpose. Remember that the defendant is on trial here only for the carjacking of a Chevrolet HHR and using a firearm in connection with that crime, not for the other acts. Do not return a guilty verdict unless the [G]overnment proves the crimes charged in counts one and two of the indictment beyond a reasonable doubt.

R. 60, Jury Instructions, PageID 242. The jury returned a verdict of guilty on both Counts that same day. After the district court sentenced Miller, he timely appealed.

## II. ANALYSIS

On appeal, Miller raises a single issue for review: whether the district court erred in admitting evidence of the Maplewood Carjacking under Rule 404(b) to prove that Miller had the requisite specific intent to carjack Becton.

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence "may be

admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

In deciding whether to admit evidence under Rule 404(b), the district court applies a three-step analysis. *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012). First, the court must find, based on sufficient evidence, that the other act in question actually occurred. *Id.* The court next decides whether the evidence is probative of a material issue other than character. *Id.* Finally, the court determines whether any probative value generated by the other act evidence is substantially outweighed by unfair prejudice. *Id.*

As the parties note, there has been some debate in our circuit over the standard we apply to review a district court's decision to admit evidence pursuant to Rule 404(b). *United States v. Carter*, 779 F.3d 623, 625 (6th Cir. 2015). In some cases, we have applied an abuse of discretion standard. *See e.g., United States v. Johnson*, 24 F.4th 590, 605 (6th Cir. 2022). "Under this standard, we will leave rulings about admissibility of evidence undisturbed unless we are left with the definite and firm conviction that the [district] court . . . relie[d] on clearly erroneous findings of fact, improperly applie[d] the law or use[d] an erroneous legal standard." *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005) (first alteration in original) (internal citations omitted). Elsewhere, we have applied different standards of review at each step of the district court's 404(b) analysis. *See, e.g.*, *Clay*, 667 F.3d at 693–96. Under this framework, we review the district court's finding that an act took place for clear error, we review the finding of proper purpose de novo, and we review the district court's balancing of prejudice for abuse of discretion. *Id.* Complicating this debate, we have at times posited that these tests are substantively the same, *id*, while, at others, suggested that these tests amount to an intra-circuit split, *Johnson*, 24 F.4th at 605. We need not

weigh in on these issues, however, because Miller's appeal does not succeed under the tripartite framework—his preferred and the purportedly stricter standard of review.

The district court allowed the jury to hear evidence about the Maplewood Carjacking, which occurred a few blocks away from and only minutes after the charged conduct. It determined that evidence that "Miller shot [Phillips] during the subsequent carjacking is highly probative of Miller's intent to kill or inflict serious bodily harm" on Becton, R. 41, PageID 83, and carefully examined relevance, materiality, and unfair prejudice.

As to step one of the three-part analysis, Miller acknowledged that his guilty plea provided sufficient evidence that the Maplewood Carjacking took place, and he does not argue otherwise on appeal. The district court did not commit clear error in finding that the Maplewood Carjacking occurred.

On the second step, we review de novo the district court's legal determination that the Maplewood Carjacking is probative of a material issue. "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) (quoting *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002)).

The federal carjacking statute, 18 U.S.C. § 2119, requires the Government to prove that a defendant had the specific intent to cause serious bodily harm or death when he or she took the victim's car. *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008). To prove specific intent, the Government must establish that the defendant did more than make an "empty threat" or "intimidating bluff." *United States v. Mack*, 729 F.3d 594, 603–04 (6th Cir. 2013) (quoting *Holloway v. United States*, 526 U.S. 1, 11 (1999)). The act of brandishing a firearm during a

carjacking, without more, is insufficient. *Id.* at 603. But "[i]f a defendant brandishes a firearm and (1) physically touches the carjacking victim, or (2) there is direct proof that the firearm was loaded, § 2119's specific intent element will be satisfied." *United States v. Washington*, 714 F.3d 962, 968 (6th Cir. 2013). Even without physical touching or direct proof that the firearm was loaded, the intent element can be satisfied through proof of "brandishing-plus": that is, "additional direct or circumstantial evidence . . . support[ing] a finding that the defendant would have killed or seriously harmed the victim if the victim had resisted." *Id.* (quoting *Fekete*, 535 F.3d at 480). This "[a]dditional evidence of intent may come in the form of circumstantial evidence that the firearm was loaded or other evidence related to the defendant's acts or statements (e.g., a threat to kill or harm) that suggests that he or she had the requisite specific intent." *Id.* at 968–69 (alteration in original) (quoting *Fekete*, 535 F.3d at 480–81).

Proof of intent is one of the admissible purposes enumerated by Rule 404(b)(2) and, ahead of trial, Miller's intent was at issue because the specific intent to cause serious bodily harm or death is an element of the charged conduct. As such, the Government was permitted to offer evidence to prove Miller's specific intent to cause serious bodily harm or death, and our precedent allows this element of § 2119 to be satisfied in part through either direct or circumstantial evidence that the brandished firearm was loaded. *See id.* at 968–69. At this second step, we must ask whether evidence of the Maplewood Carjacking was probative of intent.

The Maplewood Carjacking occurred only minutes after and in the same neighborhood as the charged conduct. According to Phillips, Miller exited the HHR, drew two pistols, and fired at least one shot, striking Phillips. This testimony was corroborated by that of Memphis Police Department Officers who recovered two spent nine-millimeter shell casings from outside 1492 Maplewood Street and the firearm that fired those shots from Phillips's Sonata. This testimony

indicates, albeit circumstantially, that Miller's firearms were loaded throughout his encounter with Becton, including when Miller pointed one of his guns at Becton's "neck and head area" and told Becton to give him everything he had and to "get the f--k out the car." R. 83, PageID 395, 415.

On appeal, Miller argues that the only directly applicable published § 2119 case in our circuit, *United States v. Clay*, cautions against the general use of evidence of prior bad acts to show specific intent. 667 F.3d at 696. In *Clay*, the Government offered evidence of a 2006 assault to show that the defendant "could develop the intent to cause serious bodily harm to innocent strangers who resist his demands" necessary to carjack a different person in 2007. *Id.* As the court explained, showing specific intent this way "perches perilously close to proving specific intent by showing propensity, as it suggests that a person who engages in bad behavior toward another is likely to do so again." *Id.* This concern, however, goes to whether the evidence was offered for a permissible purpose, not whether the evidence used in this way is probative of specific intent. *See id.* The *Clay* court addressed the latter issue next, reasoning that "[t]he two offenses at issue— assault and carjacking—[we]re too unrelated and too far apart in time to be probative of whether [the defendant] had the specific intent to do harm to [the victim]." *Id.*

This case presents none of the concerns that guided the court's decision in *Clay*. As discussed above and noted by the district court, evidence of the Maplewood Carjacking supports the Government's theory of the case that Miller's firearms were loaded throughout Miller's encounter with Becton. Therefore, it evinces Miller's specific intent far less "perilously" than by "proving specific intent by showing propensity." *See id.* Evidence of the Maplewood Carjacking was thus probative of at least one material issue other than character.

On the third step, we assess the district court's decision that any unfair prejudice generated by the evidence did not substantially outweigh its probative value. District courts have "'broad

discretion' to make 'determinations of admissibility based on considerations of relevance and prejudice,'" and "we may not 'lightly overrule' their decisions." *United States v. Barnes*, 822 F.3d 914, 923 (6th Cir. 2016) (brackets omitted) (quoting *Dixon*, 413 F.3d at 544). Unfair prejudice is not "the damage to a defendant's case that results from the legitimate probative force of the evidence," *United States v. Smith*, 70 F.4th 348, 353 (6th Cir. 2023) (quoting *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999)), but rather "the undue tendency to suggest a decision based on improper considerations," *United States v. Betro*, 115 F.4th 429, 449–50 (6th Cir. 2024) (quoting *United States v. Hazelwood*, 979 F.3d 398, 412 (6th Cir. 2020)). "This may occur when the evidence is particularly shocking or inflammatory, . . . or when it otherwise may 'arouse the jury's hostility or sympathy without regard to the probative value of the evidence.'" *Smith*, 70 F.4th at 353 (internal citation omitted) (quoting 1 Kenneth S. Broun et al., *McCormick on Evidence*, § 185 (8th ed. 2020)). However, "a court can reduce the chance of prejudice by providing limiting instructions to the jury, which juries are generally presumed to follow." *Id.*

Miller argues that evidence of the carjacking had little probative value because the Government had other means of proving specific intent. Specifically, he points to Becton's testimony, the Chelsea Express's security footage, and Officer Bailey's testimony that Becton's recounting of events matched the footage he reviewed. Miller also contends that the evidence he shot Phillips during the carjacking cast him in such a terrible light that the jury necessarily used the evidence improperly in spite of the district court's instruction.

These arguments do not give rise to the requisite "definite and firm conviction" that the district court "relie[d] on clearly erroneous findings of fact, improperly applie[d] the law or use[d] an erroneous legal standard," when it admitted evidence of the Maplewood Carjacking with a limiting instruction and with specific restrictions on Phillips's testimony to avoid the most unfairly

prejudicial evidence. *Dixon*, 413 F.3d at 544. Under our Rule 404(b) precedent and as explained both above and by the district court, the evidence is probative of Miller's intent in the context of the charged conduct, and, although the Government had other means of proving specific intent, the district court considered the availability of other evidence explicitly when it conducted its balancing.

The short amount of time between the charged conduct and the Maplewood Carjacking, Phillips's testimony of the carjacking, and the evidence linking the shell casings found at 1492 Maplewood Street to the firearms recovered from Phillips's Sonata later that day indicate that Miller's firearms were likely also loaded during the charged conduct. By contrast, none of the evidence Miller points to as also probative of specific intent supports, directly or circumstantially, a finding that Miller's firearms were loaded at that time. Thus, evidence of the Maplewood Carjacking retained much of its probative weight despite the other evidence probative of specific intent.

The district court correctly acknowledged that evidence of the Maplewood Carjacking posed some risk of unfair prejudice. It then took deliberate steps to reduce that risk. First, the court issued a limiting instruction directing the jury to "consider the evidence only as it relates to the [G]overnment's claim related to defendant's intent to commit the carjacking charged in Count 1 of the indictment" and reminding jurors that Miller was "on trial here only for the carjacking of a Chevrolet HHR and using a firearm in connection with that crime, not for the other acts." R. 60, PageID 242. The district court also required the Government to offer a sanitized version of Phillips's testimony by ensuring that jurors would not know that Miller had shot Phillips in the face and requiring Phillips to not convey any emotion while testifying. These measures were

directly responsive to the facts of this case and, taken together, substantially limited the risk of unfair prejudice posed by evidence of the Maplewood Carjacking.

As a result, Miller has not shown that the district court erred in admitting evidence of the Maplewood Carjacking.

### III.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's 404(b) ruling.