PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4109

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KENNETH LEE BAILEY, JR., a/k/a Simba,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. N. Carlton Tilley, Jr., Senior District Judge. (1:14-cr-00193-NCT-1)

Argued: March 24, 2016                    Decided: April 12, 2016

Before DUNCAN and THACKER, Circuit Judges, and DAVIS, Senior Circuit Judge.

Vacated and remanded with instructions by published opinion. Senior Judge Davis wrote the opinion, in which Judge Duncan and Judge Thacker joined.

**ARGUED:** Gregory Davis, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Winston-Salem, North Carolina, for Appellant. Kyle David Pousson, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Louis C. Allen, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, North Carolina, for Appellee.

DAVIS, Senior Circuit Judge:

Following a two-day trial, a jury in the Middle District of North Carolina convicted Kenneth Lee Bailey, Jr., of carjacking in violation of 18 U.S.C. § 2119. Bailey appeals on the ground that the government adduced insufficient evidence to support the jury's determination that he acted with the requisite intent to sustain a federal carjacking conviction.[1] We hold that, under the teaching of Holloway v. United States, 526 U.S. 1 (1999), the evidence was insufficient to support a rational finding beyond a reasonable doubt that Bailey possessed the specific intent, conditional or otherwise, to kill or seriously harm his victim when he took control of the vehicle. Accordingly, we vacate the judgment and remand with instructions that a judgment of acquittal be entered forthwith.

I

Viewed in the light most favorable to the government, see United States v. Perry, 757 F.3d 166, 175 (4th Cir. 2014), the record may be summarized as follows.

On the night of April 17, 2014, while sitting in a marked patrol car at the intersection of Railroad and Liberty Streets in Durham, North Carolina, Durham Police Officer Kimberly

---

[1] Bailey also challenges his sentence, but we need not examine that issue.

Schooley ("Officer Schooley") observed a burgundy Nissan Maxima driven by Bailey turn onto Railroad Street. As the Maxima passed her, Officer Schooley noticed that both of the vehicle's tag lights were out and that it had heavily tinted windows. Officer Schooley decided to make a traffic stop.

After watching the Maxima make several quick turns, Officer Schooley maneuvered behind the vehicle and activated the lights on her patrol car. The Maxima then made an additional turn and proceeded to drive in the wrong direction down a one-way street toward downtown Durham. Officer Schooley believed the Maxima to be traveling approximately 60 miles per hour -- 25 to 30 miles above the speed limit in that area. Not wanting to follow the vehicle the wrong way down a one-way street, Officer Schooley turned off her siren and proceeded on a parallel street, following the Maxima toward downtown Durham.

As Officer Schooley approached downtown, she came upon the Maxima, which had crashed head-on into a stone wall enclosing a small plaza near city hall. Officer Schooley observed Bailey and two female passengers standing outside the Maxima. With her weapon drawn, she ordered Bailey to raise his hands. As she got closer to the accident, however, Officer Schooley heard the cries of a child and noticed that one of the female passengers was attempting to remove a small child from the car's backseat.

3

Officer Schooley then holstered her weapon and went to the vehicle's passenger side to determine if the child was injured.

With Officer Schooley's attention diverted, Bailey fled on foot toward a nearby McDonald's parking lot. Once Officer Schooley determined that the child did not need attention and another officer had arrived on the scene, she drove to the McDonald's and discovered Devin Watkins, a college-aged male, "frantically waving and screaming" that his truck had just been stolen. J.A. 23.

At trial, Watkins testified that he had been sitting in his Toyota pickup truck with two friends when he saw a panicked and bloodied man (Bailey) whom he did not recognize running toward his truck. As Bailey got close, Watkins heard him say, "I'll pay you. I'll pay you. I'll pay you. Can I get a ride?" J.A. 37. Watkins refused, saying "no" multiple times, and attempted to lock his doors and put the truck in reverse. Id.

In a flurry of activity, however, Watkins accidentally unlocked the truck's doors for a brief moment, and Bailey opened the driver's side backdoor. Watkins attempted to keep Bailey from getting into the vehicle by quickly reversing the truck, but Bailey climbed inside behind Watkins. Both of Watkins's passengers quickly exited the vehicle, and Bailey told Watkins to "[d]rive, drive, drive, drive." J.A. 38. Bailey then placed something "hard and cold" to the back of Watkins's neck. J.A.

4

40. Watkins testified that, while he did not see Bailey with a weapon and was not sure what the item was that Bailey pressed to his neck, he believed that Bailey "was about to kill [him]." J.A. 41, 47. Because he feared for his life, Watkins quickly placed the truck in park and jumped from the vehicle into some nearby bushes. Bailey then moved to the front seat and rapidly drove the car out of the McDonald's parking lot.

After briefly speaking with Watkins, Officer Schooley pursued Bailey through an area of downtown Durham with heavy pedestrian traffic. Officer Schooley estimated that Bailey was traveling between 50 and 60 miles per hour. After making several quick turns, Bailey jumped from the truck and continued to flee on foot. The truck continued rolling until it crashed into a bollard positioned outside a local park.

Officer Schooley and Watkins testified as described above on behalf of the government at trial. Bailey called a single witness, Natalie Nicole Lane, one of the two female passengers that had been traveling with Bailey in the Nissan Maxima. She testified that she had been with Bailey the entire day leading up to the car accident and Bailey's arrest and that she never saw Bailey with a weapon. (Officer Schooley also testified that she never saw Bailey with a weapon.) The parties stipulated that Bailey was the person who ran from the crashed Maxima and took Watkins's truck and that the Toyota pickup truck had been

5

transported, shipped, or received in interstate or foreign commerce.

On August 27, 2014, after the district court denied Bailey's motion for judgment of acquittal, the jury found Bailey guilty of carjacking in violation of 18 U.S.C. § 2119, and the district court sentenced Bailey to 105 months in prison and three years of supervised release. Bailey filed this timely appeal.

II

This Court must uphold a jury's verdict "if there is substantial evidence in the record to support it." United States v. Wilson, 198 F.3d 467, 470 (4th Cir. 1999). "In determining whether the evidence in the record is substantial, we view the evidence in the light most favorable to the government and inquire whether there is evidence that a 'reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" Id. (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).

A person commits the crime of carjacking if he, "with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to

6

do so." 18 U.S.C. § 2119. To satisfy the intent element, the government must show that the defendant unconditionally intended to kill or seriously injure the car's driver or that the defendant possessed a conditional intent to kill or seriously injure the car's driver should such violence become necessary -- i.e., "that the defendant was conditionally prepared to" kill or seriously harm the driver if the driver "failed to relinquish the vehicle." United States v. Foster, 507 F.3d 233, 247 (4th Cir. 2007).

Bailey contends that, because the government failed to present sufficient "evidence that [he] intended to seriously harm or kill [Watkins] if necessary to take the truck," the jury's verdict must be vacated. Appellant's Br. 8. The government counters by emphasizing the following evidence that it says is sufficiently probative of Bailey's conditional intent to sustain the jury's verdict: (1) Bailey's reckless driving during the two high-speed chases he engaged in to avoid arrest, which risked his own life and the lives of his initial passengers -- including a five-year-old boy -- and countless pedestrians; (2) Bailey's frantic and desperate appearance when he approached Watkins for a ride and forced himself into the vehicle despite being told that no ride would be provided and despite the vehicle being in motion; and (3) Bailey's implied threat when he placed a cold, hard object to the back of

7

Watkins's neck and said "[d]rive, drive, drive, drive." J.A. 38. The government argues that the totality of this evidence provided the jury with substantial evidentiary support to "reasonably find that [Bailey] possessed the requisite intent to cause death or serious bodily harm in the taking of the truck." Appellee's Br. 12. We disagree with the government's contention.

We and our sister circuits have frequently been asked to review federal carjacking convictions in response to sufficiency of the evidence challenges, and a great many of the cases specifically focused on whether sufficient evidence of the criminal defendant's intent had been presented to the jury. See, e.g., United States v. Davis, 591 F. App'x 187 (4th Cir. 2014) (unpublished) (per curiam); United States v. Franklin, 545 F. App'x 243 (4th Cir. 2013) (unpublished); United States v. Moore, 402 F. App'x 778 (4th Cir. 2010) (unpublished) (per curiam); United States v. Foster, 507 F.3d 233 (4th Cir. 2007); United States v. Granger, 250 F. App'x 576 (4th Cir. 2007) (unpublished) (per curiam); United States v. Davis, 233 F. App'x 292 (4th Cir. 2007) (unpublished) (per curiam); United States v. Lebron-Cepeda, 324 F.3d 52 (1st Cir. 2003) (per curiam); United States v. Adams, 265 F.3d 420 (6th Cir. 2001); United States v. Wilson, 198 F.3d 467 (4th Cir. 1999); United States v. Lake, 150 F.3d 269 (3d Cir. 1998).

And while the specific evidence proffered by the government to support a finding that the defendant possessed a conditional intent to kill or seriously harm varied in each of the above cases, what is clear is that, in each case, the evidence of intent was much stronger than the evidence presented to the jury regarding Bailey's state of mind. See, e.g., Davis, 591 F. App'x at 189-90 (evidence that defendant demanded victim's car keys at gunpoint and, when victim did not comply, defendant hit victim in the head with his gun); Franklin, 545 F. App'x at 249 (evidence that defendant and co-conspirator pointed gun at victims when demanding that they surrender their vehicles, read aloud one victim's name and address to threaten victim's future safety, and groped another victim); Moore, 402 F. App'x at 781-82 (evidence that defendants charged and grabbed victim, forced victim into the back of his vehicle, and made threats that they would kill victim by burning him in his car); Foster, 507 F.3d at 247 (evidence that defendant placed a gun to victim's head, ordered victim out of the vehicle, and refused to let victim re-enter the vehicle); Granger, 250 F. App'x at 578 (evidence that defendant handed a gun to one of his accomplices who then robbed victim and took victim's vehicle); Davis, 233 F. App'x at 296 (evidence that defendants entered victim's home with a shotgun, overpowered victim, and stole victim's keys); Lebron-Cepeda, 324 F.3d at 57 (evidence that defendant placed a loaded gun against

9

victim's head and made a verbal threat); Adams, 265 F.3d at 425 (evidence that defendant physically touched three victims with his gun, entered into a physical altercation with one victim, and almost ran over another victim's head); Wilson, 198 F.3d at 469-71 (evidence that defendants held a gun to one victim's head and "probably would have beat her, dragged her, [and] might have even shot her" if she resisted); Lake, 150 F.3d at 272 (evidence that defendant placed a gun near victim's head when demanding that she relinquish her keys).

In contrast to the defendants in the above cases, in which the evidence showed that they threatened their victims with actual weapons, made affirmative threatening statements, and/or physically assaulted their victims, Bailey initially suggested that he would pay Watkins for a ride, and only when Watkins refused did Bailey enter the vehicle, place a "cold and hard" item to Watkins's neck, and say "[d]rive, drive, drive, drive." J.A. 38, 40. Bailey admits (for good reason) that, by entering the truck, touching something to Watkins's neck, and ordering Watkins to drive, he hoped that he would scare Watkins. Appellant's Br. 8. And as one can readily imagine, Watkins testified that, at the time, he was fearful that Bailey was going to kill him. J.A. 38, 41.

Importantly, however, as became clear during the testimony of Officer Schooley, J.A. 28, Watkins, J.A. 46, and Lane, J.A.

10

54, no one ever saw Bailey with a weapon, and the government has not argued on appeal that Bailey possessed a weapon that simply went unseen or undiscovered, or even that there is substantial evidence to support an inference that he might have had a weapon.

In Holloway, the case in which conditional intent was established as a viable means of establishing mens rea for purposes of federal carjacking, the Supreme Court explained that "an empty threat, or intimidating bluff, . . . standing on its own, is not enough to satisfy § 2119's specific intent element." 526 U.S. at 11.  In this case, each trial witness with potential knowledge of the matter testified uniformly that she or he never saw Bailey possess a weapon, and the government never suggested on appeal that Bailey actually possessed a weapon.[2]  Nor is there evidence of an actual threat to inflict harm on Watkins.  Thus, a rational trier of fact could only conclude that Bailey, in holding a "cold and hard" object to Watkins's neck and ordering Watkins to drive, at most, and in the language of Holloway, engaged in an empty threat or an intimidating bluff in hopes of

---

[2] At oral argument, the government indicated that it had argued to the jury that the "cold and hard" object was a weapon. However, it failed to include its closing argument in the joint appendix, and the government did not argue in its appellate brief that Bailey possessed a weapon.  We think it significant that the government abandoned this argument on appeal.

coercing Watkins into aiding his escape from the pursuing law enforcement officer.

To be sure, as the government points out, the jury had before it evidence of Bailey's episodes of reckless driving and panicked state to consider. Holloway, however, requires factfinders to look "to the defendant's state of mind at the precise moment he demanded or took control over the car" and instructs that proof of the requisite mens rea can only be satisfied if, at that precise moment, "the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." Id. at 8, 12 (emphasis added).[3] Bailey's panicked state and reckless driving to evade police clearly evidenced his carelessness and desperation, and he obviously placed his initial passengers and countless pedestrians in harm's way. Bailey's conduct during the chase was certainly probative of his state of mind, but insufficient for the purposes for which it is proffered here. Applying Holloway, we have no hesitation in concluding that evidence of generalized

---

[3] Our reasoning is not inconsistent with that in United States v. Basham, 561 F.3d 302, 328 (4th Cir. 2009). There, we found no error in the district court's admission under Federal Rule of Evidence 404(b) of the defendant's repeated statements prior to the charged carjacking, in which the victim was actually murdered, of his willingness to commit murder. As Basham did not raise a sufficiency of the evidence challenge to his conviction, Holloway was neither cited nor discussed.

recklessness and desperation, coupled with an unconsummated implied threat or "bluff" provided insufficient evidentiary support from which a jury could reasonably find beyond a reasonable doubt that Bailey possessed the specific intent, conditional or otherwise, to kill or seriously harm Watkins when he took control over Watkins's truck.[4]

Thus, even when construed in the light most favorable to the government, the evidence is insufficient to permit a reasonable factfinder to conclude beyond a reasonable doubt that Bailey had the intent to inflict serious bodily harm or to kill Watkins if necessary to take Watkins's truck.

---

[4] In denying Bailey's motion for a judgment of acquittal, the district court seemed to focus unduly on Watkins's understandable fear and apprehension that he would be killed, stating:

> It's my understanding intent is determined by the Defendant's conduct and also by the interpretation of the -- the victim's interpretation of that conduct with regard to the person's intent. . . . Mr. Watkins said he bailed out of the car because he thought he was going to be killed if he didn't.

J.A. 56, 59. We do not doubt that, on an appropriate evidentiary foundation, apart from a perpetrator's actual conduct (obviously), evidence of a victim's subjective reaction to a perpetrator's conduct and/or evidence of objective manifestations of a victim's state of mind, might well be probative of a perpetrator's specific intent to harm or kill. This plainly is not such a case. Surely, virtually any robbery victim such as Watkins will be intimidated and frightened and will look to escape his predicament at the earliest opportunity. Holloway requires more, however, to prove the specific intent element of the federal offense of carjacking under § 2119.

III

For the reasons set forth, the judgment is vacated, and we remand the case for entry of a judgment of acquittal.

VACATED AND REMANDED WITH INSTRUCTIONS