# United States Court of Appeals
## For the First Circuit

No. 15-1010

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS YOEL DÍAZ-ROSADO,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]


Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.


Alejandra Bird López for appellant.
Francisco A. Besosa-Martínez, Assistant United States
Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States
Attorney, and Mariana E. Bauzá-Almonte, Assistant United States
Attorney, Chief, Appellate Division, were on brief for appellee.


May 18, 2017

**KAYATTA**, **Circuit Judge**.  Luis Yoel Díaz-Rosado ("Díaz") was convicted of carjacking under 18 U.S.C. § 2119.  On appeal, he challenges the sufficiency of the evidence on the issue of intent, the admission of an alleged confession, the rejection of a proposed supplemental jury instruction, and the admission of an in-court witness identification.  For the following reasons, we affirm.

## I.  Background

Although we recite the facts relevant to Díaz's sufficiency challenge in the light most favorable to the prosecution, we "provide a more or less neutral summary" of the facts relevant to Díaz's remaining claims, and reserve further exposition of those facts for our analysis of the claims themselves.  See United States v. Flores-Rivera, 787 F.3d 1, 9 (1st Cir. 2015).

On March 8, 2013, Margarita Irizarry-Ramírez ("Irizarry") picked up her four-year-old granddaughter from elementary school in Hato Rey, Puerto Rico.  As Irizarry attempted to buckle the child into a car seat, she sensed the presence of somebody approaching from behind.  When she turned around, she found herself facing a man standing approximately five feet, six inches tall, and wearing a dark-colored baseball cap, sunglasses, and a dark-colored shirt.

The man attempted to wrest Irizarry's car key from her.  In the ensuing struggle, which we describe in greater detail below,

the man seized the key to the car. As this altercation was taking place, Ronald Vázquez-Rosado ("Vázquez")--a parent at the school --tried to assist Irizarry by attempting to remove her granddaughter from the car. Unable to do so, Vázquez urged Irizarry to remove her granddaughter herself while he tried to restrain the man, who had by that point entered the driver's seat of the vehicle. Irizarry succeeded, Vázquez got out of the car, and the man drove away.

Vázquez, a former undercover police officer for the Puerto Rico Police Department ("P.R.P.D."), subsequently gave chase in his own vehicle and called 911. While on the telephone with the 911 operator and a police officer, Vázquez spotted Irizarry's vehicle being driven by a man with short black hair. Vázquez relayed this information to the operator and the officer. Noticing that Irizarry's car had suddenly stopped, and fearful that the man might try to engage him, Vázquez drove off and returned to the school.

A short time later, P.R.P.D. Agent William Méndez-Guzmán ("Agent Méndez") and his patrol partner spotted the stolen vehicle. After a brief chase by car and on foot, Agent Méndez apprehended the driver of the car, whom he later identified as Díaz. Though Irizarry had initially provided the police with a description of the man who had taken her car, she was unable to identify Díaz in a lineup conducted several hours later. Vázquez was similarly

unable to identify Díaz in a photo array conducted a few days later.

Agent Méndez testified that after arresting Díaz, he read Díaz his Miranda rights and took him to the local precinct. Agent Méndez further testified that once they were at the police station, he again advised Díaz of his Miranda rights--both verbally and in writing--and after Díaz acknowledged by signature his receipt of a written copy of those rights, Díaz told him that "he wanted to testify something, to state something." Agent Méndez testified that he "told [Díaz] that if he had anything that he wanted to say . . . he should write it out on the reverse side of the [Miranda form]," and that Díaz subsequently wrote and signed a statement that (the defendant stipulated) translates to English as follows:

> I, Luis Yoel Díaz Rosado, belatedly repent the acts I committed against the lady and someone known to me who got into a mess that he did not commit. Sorry.
>
> Thoughtfully,
> Luis Yoel Díaz Rosado
>
> I took the car keys from the lady under the influence of substances, may God bless her. And I remember that the police hit the siren.
>
> Thoughtfully,
> Luis Yoel Díaz Rosado

Later that night, P.R.P.D. Agent Angel Fernández-Ortega ("Agent Fernández") presented the case to Puerto Rico District

- 4 -

Attorney Francelis Ortiz-Pagán ("D.A. Ortiz"). D.A. Ortiz declined to press charges under the Commonwealth's carjacking statute, due to concerns that Díaz's confession was not "conscious and intelligent" under Pueblo v. Millán Pacheco, 182 P.R. Dec. 595 (2011). Federal prosecutors subsequently charged Díaz with one count of carjacking under 18 U.S.C. § 2119, and a grand jury returned an indictment on this charge on March 21, 2013.

Prior to trial, Díaz filed a motion in limine to suppress his written confession, arguing that the confession was provided "under the effects of controlled substances" and thus was not voluntary. In the ensuing hearing, D.A. Ortiz testified that Agent Fernández had informed her that Díaz had appeared to be under the influence of drugs during the lineup, which, again, had taken place several hours after Díaz's arrest. However, Agent Fernández denied not only making this statement but also having the impression that Díaz was on drugs. Agent Méndez and another one of the arresting officers--P.R.P.D. Agent Heriberto Soto-Cruz ("Agent Soto")-- similarly testified that Díaz did not appear to be under the influence of controlled substances, and Irizarry testified that she did not notice any of the lineup participants "acting in a weird way physically in any way." Though the court "f[ou]nd [D.A. Ortiz] credible," it also determined that "the witnesses are pretty consistent in that this gentleman was not behaving strangely." The district court then denied Díaz's motion.

Part way through the subsequent trial, Díaz renewed his motion to suppress his alleged confession on the basis of videos filmed by his brother at the precinct house several hours after Díaz had been brought there. In those videos, an unidentified male voice can be heard saying that "it looks like . . . when [Díaz] came in, he came in too . . . way too you-know-what on drugs," and further, that "[Díaz] said . . . that he had taken some pills." Díaz's brother testified that that voice belonged to a police officer who was staffing the precinct's reception desk. The brother also testified that Díaz "had a psychiatric history" as well as "drug problems," and that when he saw Díaz in the station, "[Díaz] was raising his voice, he was babbling, and his hands were on the cell bars and he had an erratic behavior." Nevertheless, the district court denied Díaz's renewed motion to suppress, on the ground that the videos failed to show that Díaz was "actually being coerced."

During trial, the government called Vázquez to testify. In the course of cross-examination, Díaz's attorney engaged in the following exchange with Vázquez:

> Q: And the person was not in that photo; you were not able to identify any person in that photo spread as the person whom you had intervened with.
>
> A: At that moment I was not convinced of the identification of any person, but at this moment I am convinced of the identification of the person.

Q: You are? Please tell me. Please tell me.

A: What do you want me to tell you?

Q: You said that you were now. Please tell me.

A: Yes, I am convinced that I can point out who is the person who carried out the carjacking.

Q: Who did?

A: The man who is seated over there behind the monitor.

The judge then clarified that Vázquez was referring to Díaz. Díaz's attorney did not ask the court to strike Vázquez's testimony.

On January 31, 2014, after twice denying Díaz's motions for acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court instructed the jury as follows:

> We're almost done. Now let me give you an instruction about statements made by Mr. Díaz-Rosado. And you heard evidence in this case that Luis Yoel Díaz-Rosado made a statement in which the government claims to you that he admitted certain facts. It is for you to decide whether Luis Yoel Díaz-Rosado indeed made that statement, based on the evidence presented here, and, if so, how much weight you give to it. In making these decisions, you should consider all of the elements about the statement including the circumstances under which the statement may have been made and any facts or circumstances tending to corroborate or contradict the version of events described in the statement.

During the course of its deliberations, the jury sent the following note to the district court judge:

> Pueblo V Millán Pacheco [sic] law that confeccion [sic] need to be concious [sic] and intelligent . . . aply's [sic] to the federal courts? Or the confeccion [sic] is acceptable no matter in what condition.

Díaz's attorney asked the judge to respond by telling the jury that "the Court has admitted the confession," and "it's up to you, the jury, to decide how much or how little you're going to believe it." Díaz's attorney contended that "telling [the jurors they] don't have to concern [themselves] with [Millán] would be . . . a misstatement of the law," insofar as "[b]oth [Millán] and federal case law state that a confession has to be given in a freely, voluntary manner."

> The judge opted to state the following:

> Now, you need not concern yourselves--the [Millán] holding. [D.A. Ortiz] mentioned it, I did not allow her to go into details. That is a case from the Puerto Rico Supreme Court. Now, you need not concern yourselves with that case. In this particular case, I, as the judge in the case, allowed the confession in this case to be presented into evidence, and you have the confession before you. So, I will give you the instruction I gave you on how to consider that confession as evidence in this case just like any other evidence. And I will read it to you.

After repeating his prior instruction, the judge told the jury:

> So, as I stated, I have allowed the confession--I admitted the confession into evidence. So, it is before you to consider.

- 8 -

Before the jury could be excused, however, Díaz's attorney approached the bench and again "propose[d] that [the judge] advise the jury that the confession has to be given in a free and voluntary manner" and that "like any other piece of evidence they are free to accept it in its totality, accept it partially or not to accept it at all." The judge once more declined to provide the additional instruction:

> I allowed the evidence that the suppression was given, you've made your arguments; and they can--you know, either they find it's true or it's a whole lie, and that's the argument [that] you made before the jury. But I made the determination in the suppression conference.

The judge then excused the jury.

Shortly thereafter, the jury convicted Díaz of one count of carjacking under 18 U.S.C. § 2119. Díaz was subsequently sentenced to seventy-one months of imprisonment.

## II. Discussion

### A. Sufficiency of the Evidence

We review preserved challenges to the sufficiency of the evidence de novo. United States v. Pena, 586 F.3d 105, 111 (1st Cir. 2009). However, in so doing, "we examine the evidence, both direct and circumstantial, in the light most favorable to the prosecution and decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational

factfinder to conclude beyond a reasonable doubt that the defendant committed the charged count or crime." United States v. Cruz-Díaz, 550 F.3d 169, 172 n.3 (1st Cir. 2008).

Díaz's sufficiency challenge focuses solely on the element of intent required for a carjacking conviction under § 2119, and so we do as well. The statute imposes liability upon any individual who, "with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation." 18 U.S.C. § 2119. Díaz argues that because he did not wield a weapon, make any "threatening gestures or verbal threats," or otherwise manifest an intent to kill or cause serious bodily harm, the evidence is insufficient to sustain a conviction under the statute.

"The intent requirement of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)." Holloway v. United States, 526 U.S. 1, 12 (1999). Thus, the conditional intent to cause serious harm or death can satisfy § 2119. Id. at 8.

In our prior opinions deeming the evidence sufficient to support a finding of intent to seriously harm another if necessary, the defendants have, as Díaz notes, possessed items traditionally viewed as weapons, such as guns.  See, e.g., United States v. Melendez-Rivas, 566 F.3d 41, 45 (1st Cir. 2009); United States v. García-Álvarez, 541 F.3d 8, 16 (1st Cir. 2008); United States v. Lebrón-Cepeda, 324 F.3d 52, 57 (1st Cir. 2003) (per curiam).  Nothing in the statutory language, though, requires the presence of such an item.  Nor does common sense.  Just as one can use brute force or a variety of items to kill or cause serious harm, one can also use such force or items to manifest an intent to cause death or serious harm if necessary.  See United States v. Hayworth, No. 16-5358, 2017 WL 927782, at *3 (6th Cir. Mar. 8, 2017) (unpublished opinion) (first citing United States v. Fekete, 535 F.3d 471, 480 (6th Cir. 2008); then citing United States v. Edmond, 815 F.3d 1032, 1040 (6th Cir. 2016), vacated and remanded on other grounds sub nom. Harper v. United States, No. 16-5461, 2017 WL 1366702 (U.S. April 17, 2017) (mem.)) (finding the evidence sufficient to sustain a § 2119 conviction where the defendant "wrestled with" and "jabbed" a fallen woman who was nine months pregnant).

Here, it is undisputed that Díaz used both physical force and the car itself to effect the heist.  So the question is:  were Díaz's actions sufficient to support a finding that Díaz actually intended to cause serious harm if that were necessary to steal the

car?  While the case is close, we think that the evidence is indeed sufficient when viewed, as it must be, in the light most favorable to the verdict.

We have at the outset a grandmother and her grandchild, with the latter sitting in a car seat inside a vehicle parked near an elementary school.  A jury could certainly find that the grandmother would not have surrendered the vehicle with the child inside of it without offering maximum resistance.  And Díaz showed from the get-go that he was nevertheless prepared to overcome such resistance.  He "grab[bed]" Irizarry's hand, "struggl[ed] with [her]," and "push[ed] and shov[ed]" her.  Eventually, according to Irizarry's testimony, Díaz "thr[e]w [her] onto the cement sidewalk," at which point he was able to wrest loose her car key from her keychain.[1]  Irizarry's testimony is supported by that of Vázquez, who stated that he observed Díaz "struggling with [Irizarry], manag[ing] to overcome her and . . . throw[] her, . . . [and] slam[] her onto the floor."  The record also shows that Díaz put Irizarry's vehicle into gear and began to move it while she was attempting to extricate the child from the car seat and Vázquez was "struggl[ing]" with Díaz in the front seat.

Viewed in combination and in the light most favorable to the verdict, these facts are sufficient to allow a rational jury

---

[1] As a result of the altercation, Irizarry suffered scratches, cuts, and a hematoma on her left knee.

- 12 -

to conclude beyond a reasonable doubt that Díaz was willing to cause serious bodily harm in order to abscond with Irizarry's car. We have previously indicated that the fact that a defendant "used violence from the very beginning of the incident . . . suggest[s] a willingness to harm the victim" within the meaning of § 2119. United States v. Rodríguez-Adorno, 695 F.3d 32, 42 (1st Cir. 2012). Here, Díaz not only used violence from the outset, but he also initiated the heist in circumstances where it was virtually certain that violence would be necessary. Crucially, at each juncture of the incident, Díaz did in fact employ whatever force was necessary to accomplish his aim. The force progressed from pushing and pulling, to a body slam, to intentionally moving the vehicle in a manner that, as the culminating act in an effort to separate a desperately resistant grandmother from the car containing her grandchild, could rationally be seen as manifesting an intent to cause serious injury if doing so were necessary to take the car. Because this "plausible rendition of the record" provides adequate support for the jury's verdict, United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992), we conclude that the government presented sufficient evidence to sustain Díaz's conviction under § 2119.

**B.  Written Confession**

Díaz next argues that the district court erred by admitting his confession, because the government failed to carry its burden of proving the voluntariness of that confession. He

contends that because "he was under [Agent] Méndez's total and exclusive custody and control" when he provided the statement, "the government's inability to offer any credible affirmative evidence"--aside from Díaz's signed Miranda form and Agent Méndez's testimony--"warrants an inference that the alleged confession was involuntary."

The problem for Díaz is that the record amply supports the conclusion that his confession did not result from police interrogation or coercion. If an individual simply walks into a police station and announces that he just robbed a bank, the Constitution does not per se bar the government from using that announcement against the person. Miranda v. Arizona, 384 U.S. 436, 478 (1966). The same is true even if the individual is in police custody when he makes such an announcement, so long as the police do not interrogate the individual, i.e., engage in "[a] practice that the police should know is reasonably likely to evoke an incriminating response," Rhode Island v. Innis, 446 U.S. 291, 301 (1980), or otherwise engage in "coercive police activity," Colorado v. Connelly, 479 U.S. 157, 167 (1986).

Here, Officer Méndez testified that immediately after he booked Díaz at the police station and administered verbal and written Miranda warnings--the latter of which Díaz signed--Díaz told him of his own volition that "he wanted to testify something, to state something." Díaz does not parry this testimony with any

- 14 -

claim that Agent Méndez coerced or improperly elicited his confession. Rather, he contends that his confession was not "voluntary" in the sense that his decision to speak was the result of a drug-addled state.

The flaw in this argument is that in this context, a finding that a confession is not "voluntary" requires a finding of coercive police activity, even if only in the form of a custodial interrogation. Id.; see also United States v. Palmer, 203 F.3d 55, 61-62 (1st Cir. 2000). Here, there is no evidence of such activity, and so the district court did not err in finding the confession admissible.

Taking a slightly different tack, Díaz points to the general principle that waivers of important rights need be "knowing, intelligent, and voluntary." See, e.g., United States v. Melendez-Santiago, 644 F.3d 54, 59 (1st Cir. 2011) (quoting Maryland v. Shatzer, 559 U.S. 98, 104 (2010)); see also Miranda, 384 U.S. at 479. Here, though, there was no waiver of any such right. The only relevant right was the Fifth Amendment right not to be compelled to speak, and its prophylactic corollary to receive a Miranda warning before being subjected to custodial interrogation. Díaz makes no claim that he was interrogated while in custody, nor does he claim that he was otherwise coerced. And though the Fifth Amendment confers the "right to remain silent," Miranda, 384 U.S. at 479, that right simply means the right not to

be compelled by the government into offering evidence against oneself, see id. at 478. Absent any evidence of such compulsion here, and given Officer Méndez's unrebutted testimony regarding the lack of coercion, there was no need for the district court to find any waiver, knowing or otherwise.[2]

This is not to say that evidence of Díaz's mental state is irrelevant to his guilt or innocence. The jury could well have considered his alleged impairment as reason to give the confession little or no weight. See United States v. Feliz, 794 F.3d 123, 130-31 (1st Cir. 2015). Díaz cites no authority, though, for the mandatory exclusion of a volunteered confession solely because the confessor was under the influence of a controlled substance at the time of the confession.

We reject, too, Díaz's complaint that the district court never expressly stated that the confession was voluntary. As we have explained, the only relevant issue of voluntariness was whether the confession was coerced by police misconduct. The

---

[2] We reject Díaz's argument that the district court committed error in its assignment of the burden of persuasion on the question of voluntariness. Either Díaz waived this argument by agreeing during the suppression hearing to assume whatever burden the district court placed on him, or he failed to object to that burden, thereby circumscribing our review to plain error. See United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002). And even if we were to assume arguendo that the district court mixed up the burdens, our earlier determination that the confession was voluntary precludes us from finding plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

court's express and supported finding that the confession was not coerced served as a sufficient proxy for a finding of relevant voluntariness. See id. at 131 (citing Sims v. Georgia, 385 U.S. 538, 544 (1967)) (finding that the district court's "conclu[sion] that the confessions were not coerced . . . was enough to provide a sufficiently clear ruling" on the matter of voluntariness).[3]

We also see no basis for concluding that the district court delegated to the jury the "purely legal question" of voluntariness. See id. at 130. To the contrary, the district court quite properly and expressly left to the jury only the question of how much weight to give the confession, leaving Díaz able to argue that it was the product of his intoxicated condition and thus not credible. This allocation of factfinding responsibility was precisely what precedent calls for. See id. at 130-31.

## C. Jury Instruction

Díaz next contends that the district court abused its discretion in responding to the jury's question about the confession. He argues in his brief that "[t]he emphasis placed on the judge's admission of the alleged confession could be read to instruct the jury that they must consider the confession, allowing

---

[3] We therefore need not decide whether a failure by the district court to make an ultimate finding of voluntariness could be prejudicial error where on de novo review we find the confession to have been voluntary.

it discretion only as to whether it would be . . . given a great deal of weight or less weight, but not that it was free to disregard the alleged confession." He further contends that "[t]he clarifying instruction requested by the defense--you as the jury are entitled to accept the confession or to disregard it based on the circumstances surrounding the written statement--would have gone a long way to correcting this impression."

"In determining whether a district court's refusal to give a jury instruction is reversible error, 'we look to see whether the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case.'" United States v. Berríos-Bonilla, 822 F.3d 25, 32 (1st Cir.), cert. denied, 137 S. Ct. 206 (2016).

Even granting Díaz the argument that his requested instruction was correct as a matter of substantive law,[4] we agree with the government that the instruction was substantially incorporated into the charge as rendered.[5] Díaz did not ask that the trial judge not tell the jury that he had determined the confession to be admissible. The only relevant difference between

---

[4] The government argues otherwise. In its view, Díaz's proposed instruction urges the jury to "make another independent finding on the issue of voluntariness."

[5] Díaz concedes that the prior jury instruction was "adequate."

Díaz's requested instruction and the district court's given instruction is that Díaz wanted the jurors told expressly that, in deciding how much weight to give the confession, they could opt for no weight at all. We think that such a possibility was manifest in the instruction that the court reread to the jurors telling them that they were to decide how much weight to give a confession based, among other things, on all of the circumstances in which it was given. The court's reminder that the jurors should treat the evidence like all other evidence--which they must have known they could disregard if they thought the confession warranted no weight[6]--reinforced this manifest possibility. Accordingly, the district court did not abuse its discretion by choosing to repeat its prior instruction rather than using the precise language proposed by Díaz.

## D. In-Court Identification

Finally, Díaz's challenge to Vázquez's in-court identification of Díaz is hobbled by his lack of objection at trial and, in any event, defeated by his express solicitation of the now-challenged testimony. In fact, the record shows that Vázquez initially manifested reluctance to actually name Díaz, and did so only after Díaz's counsel's repeated requests that Vázquez

---

[6] Notably, the court had earlier instructed the jurors that they "may believe everything a witness says or . . . part of what a witness says or . . . zero, nothing of what a witness says."

"[p]lease tell [him]" who took Irizarry's car.  On this record, Díaz cannot argue that the district court should have stricken Vázquez's testimony, much less that it was plain error for the court not to do so sua sponte.  See United States v. Cruz-Feliciano, 786 F.3d 78, 89 (1st Cir. 2015) ("[A] defendant cannot complain about the admission of testimony directly responsive to a question posed by defense counsel.").

### III.  Conclusion

For the foregoing reasons, we affirm.

**-Concurring Opinion Follows-**

**TORRUELLA**, **Circuit Judge**, **concurring**. While I agree with this opinion's analysis finding conditional specific intent on the facts of this case, I write separately in order to emphasize why a narrow reading of this opinion and the requirements for specific intent are in order.

Congress does not have the authority to criminalize any behavior that it desires. Rather, its power is limited, inter alia, by the Commerce Clause. United States v. Lopez, 514 U.S. 549, 552-53 (1995). This limitation is in place because our system of government is a federal one. Matters of crime control have traditionally been reserved to the states and for good reason. Local understandings about crime, criminal behavior and punishment have varied, as can be seen most recently with the upsurge in states legalizing the use of marijuana.

The dangers inherent in overlapping jurisdiction are evident in this case. Local police were unsuccessful in persuading local prosecutors to bring a case against Díaz, so they appear to have somewhat clarified their account and taken it to the U.S. Attorney's office, who willingly took the case. These facts suggest the risk of abuse that this type of forum shopping affords to the police.

For these reasons, federal criminal statutes need to be interpreted narrowly, to ensure that the courts are not extending federal jurisdiction beyond the point envisioned by Congress and

intruding into realms specifically left to the Commonwealth. Here Congress has built at least two significant limiting features into the elements of the offense: (1) specific intent to commit (2) substantial injury. I will address these in turn, taking the latter first.

## I. <u>Substantial Injury</u>

The carjacking statute applies to anyone who "with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so." 18 U.S.C. § 2119. While there is no definition of "serious bodily harm" in the body of the statute, there is a sentence enhancement imposed when the perpetrator actually causes "[s]erious bodily injury," which itself is further defined as "bodily injury which involves-- (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ or mental faculty." 18 U.S.C. § 1365(h)(3). This level of harm contemplated by the statute is significant, and requires more than simply injuring or threatening to injure the victim. There must be an intent to cause something equivalent to "extreme physical pain," "protracted and obvious disfigurement," or "protracted loss

or impairment of the function of a bodily member, organ or mental faculty."  Id.

## II. Specific Intent

While the substantial injury requirement is a significant limiting factor on the types of cases that may be covered by this statute, the specific intent requirement also considerably limits its scope.  It is insufficient to prove that substantial injury is a likely or probable result, rather the government has to prove that the defendant specifically intended that substantial injury would occur.  The requirement that there be specific intent to cause serious bodily injury has been complicated somewhat by the Supreme Court in Holloway v. United States, 526 U.S. 1 (1999).  There the Supreme Court held that "[t]he intent requirement of § 2119 is satisfied when the Government proves that . . . the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car." Id. at 12.  This has become known as conditional intent, and it means that the government does not have to prove that the defendant always intended, regardless of the victim's actions, to cause serious bodily harm.  Rather, it is enough for the government to prove that the defendant acted with the intent to cause serious bodily harm if such harm was necessary to effect his or her aims.

Either because of the high level of intent required by the statute or, perhaps more likely, because of the ubiquity of

firearms, carjacking cases frequently involve firearms. Holloway, 526 U.S. at 4 (firearm pointed at driver and a threat to shoot unless the driver handed over the car keys); United States v. Melendez-Rivas, 566 F.3d 41, 43 (1st Cir. 2009) (gun held up to victim's face); United States v. García-Álvarez, 541 F.3d 8, 11-12 (1st Cir. 2008) (victim was assaulted by four men possessing at least one firearm); United States v. Matos-Quiñones, 456 F.3d 14, 16 (1st Cir. 2006) (handgun pressed against victim's back); United States v. Lebrón-Cepeda, 324 F.3d 52, 57 (1st Cir. 2003) (per curiam) (loaded and cocked revolver placed against the victim's head); United States v. Evans-García, 322 F.3d 110, 115 (1st Cir. 2003) (gun placed on the victim's head and told gun was cocked).

Indeed, the original carjacking statute limited itself to carjackings "committed by a person 'possessing a firearm.'" Holloway, 526 U.S. at 5. However, the original statute was amended in 1994 to omit the firearm limitation. Id. Thus, although firearms may frequently still be present at carjackings, it seems clear that Congress did not intend for the statute to only apply to situations in which a firearm is present.

This does not mean, however, that the other limitations present in the statute were, or should be read to have been, watered down. Because firearms are themselves capable of causing serious bodily injury, courts have been quick to find specific intent to cause the same when a firearm is present. The question

posed by this case is what set of facts can amount to a specific intent to commit serious bodily injury in the absence of a firearm?

The government points to two cases that it argues suggest that physical threats are sufficient to prove the required intent. In United States v. Edmond, a group of carjackers succeeded in carjacking five vehicles and attempted carjacking a sixth. 815 F.3d 1032, 1038 (6th Cir. 2016), vacated and remanded on other grounds sub nom. Harper v. United States, No. 16-5461, 2017 WL 1366702 (U.S. April 17, 2017) (mem.). In five of the six instances, the Sixth Circuit easily upheld the sufficiency of the evidence as to intent because "[t]he intent element of the carjacking offense is satisfied at a minimum if 'a defendant brandishes a firearm and . . . physically touches the carjacking victim.'" Id. at 1039 (quoting United States v. Washington, 714 F.3d 962, 968 (6th Cir. 2013)). The attempted carjacking count presented a closer question, however, because the jury did not convict the defendant of the related firearm count, suggesting that it was not necessarily convinced that there was a firearm present at the attempted carjacking. Id. at 1040. The facts of this count are elusive. One of the defendants attempted to steal a car from a valet service but "[t]he valet wrestled the keys away from [the defendant]." Id. The Sixth Circuit held that "the jury reasonably could have viewed [the defendant's] physical fight with the valet as indicative of 'intent to cause death or serious bodily

- 25 -

harm.'" Id. In making this argument the Sixth Circuit relied on its own prior precedent holding that "[t]he requisite mens rea can be shown by evidence of an intent to use a knife, a baseball bat, brute force, or any other means that indicates an ability and willingness to cause serious bodily harm or death if not obeyed." United States v. Fekete, 535 F.3d 471, 480 (6th Cir. 2008).

Those courts that have not found specific intent tend to base their holding on Holloway's finding that "an empty threat, or intimidating bluff, . . . standing on its own, is not enough to satisfy § 2119's specific intent element." 526 U.S. at 11. For example, in United States v. Bailey, the Fourth Circuit found insufficient evidence of specific intent when the defendant jumped in the backseat of a vehicle, pressed something cold and hard against the neck of the driver, and then drove off in the vehicle after the driver abandoned it in fear for his life. 819 F.3d 92, 95 (4th Cir. 2016). The court reasoned that all of the cases finding specific intent had evidence showing that the defendants "threatened their victims with actual weapons, made affirmative threatening statements, and/or physically assaulted their victims." Id. at 97. In Bailey, in contrast, the Fourth Circuit found that by holding a hard object against the driver's neck the defendant intended to coerce the victim, but absent evidence of an actual weapon this could not amount to a specific intent to cause serious harm to the victim. Id. Even combined with evidence of

"generalized recklessness and desperation" the court found this insufficient to support a finding of specific intent. Id. at 98.

I am willing to join the majority opinion because the facts of this case more closely align with the threats and attempts to use brute force identified by the Sixth Circuit above, than they do with the "empty threat" or "bluff" identified by Holloway and the Fourth Circuit. Moreover, while certain forms of physical struggle, while not necessarily indicating an empty threat or bluff may still not rise to the level of threatening serious bodily harm, in this case, Díaz displayed a willingness to use as much physical force as was necessary to effectuate his aims. His actions in physically struggling with both Mrs. Irizarry and Mr. Vázquez do not have the appearance of being empty threats or bluffs but rather actual attempts to use brute force to take the car. The acts of violence that Díaz actually committed, combined with the continuing escalation of violence as he encountered and overcame obstacles in taking the car, all indicate that the jury had sufficient evidence to find specific intent to cause serious bodily injury. This case should not be read to indicate, however, that we are lowering the threshold required to find specific intent. Rather, we are merely finding, consistent with the carjacking statute, that there are numerous ways by which serious bodily injury may be committed.